## KATIE A. DICKINSON *vs.* LEOMINSTER SAVINGS BANK.

Middlesex.    March 18, 1890. — June 21, 1890.

Present: FIELD, DEVENS, W. ALLEN, HOLMES, & KNOWLTON, JJ.

*Savings Bank — Deposit for Minor — Statute of Limitations.*

If deposits in a savings bank in the name of a minor, made in part by the minor and in part by her father, are wholly paid by the bank to him without the minor's knowledge or authority, the same is not a valid payment within the Pub. Sts. c. 116, § 29, authorizing the payment of " money deposited in the name of a minor . . . to the person making such deposit," beyond the deposits made by him.

In an action against a savings bank to recover a deposit in the name of a minor, as wrongfully paid to the person making the deposit upon a surrender of the deposit-book, it appeared in evidence that the minor's guardian and the defendant's treasurer at the time the deposit was made and withdrawn came to the bank, and the latter asked for the deposit-book, and in the presence of his successor explained all the payments to the guardian; but it did not appear that there was any conversation between such successor and the guardian, or that the liability of the bank was discussed. *Held,* that it could not be said, as matter of law, that there was such a demand on the bank or denial of its liability as to cause the statute of limitations to begin to run in its favor.

CONTRACT, on an account annexed, to recover money deposited with the defendant bank in the name of the plaintiff during her minority.    The account annexed was made up of twelve items, consisting of deposits numbered from 1 to 11, made from November 20, 1867, to December 1, 1870, and the remaining item of " dividends," in all amounting to five hundred and ten dollars.    Trial in the Superior Court, before *Brigham*, C. J., who ruled that the plaintiff could not maintain her action, and ordered the jury to return a verdict for the defendant, and reported the case for the determination of this court.    If the ruling was wrong, and certain evidence was improperly admitted, the verdict was to be set aside and a new trial ordered; otherwise, the verdict was to stand.    The facts and nature of the evidence appear in the opinion.

*G. A. A. Pevey*, for the plaintiff.

*H. Mayo*, for the defendant.

FIELD, J.    The evidence that the deposits stood on the books of the bank in the name of the plaintiff, and that a deposit-book

numbered 221 had been issued in her name, was evidence against the bank that it had been indebted to the plaintiff to the amount of the deposits and the dividends declared thereon.  The plaintiff testified that she made deposits numbered 1, 3, 6, and 10, and that her uncle, in her presence, made deposit numbered 2, and that all these were deposits of her money.  These amount to $16.70.  She also testified that deposits numbered 4, 5, 7, 8, and 9 were of her money, given her by her father.  These amount to $444.24.  As to deposit numbered 4, she testified that her father came home and said, " Katie, I have given you $100.  It is deposited to your account in the bank."  She further testified that at other times he had told her that he had deposited money in her name on her account; and also that she had the bank-book in the first place, but that her father afterwards kept possession of the bank-book.  The remaining credits are of dividends to the amount of $28.38, and of a deposit numbered 11, on December 1, 1870, of $20.68.  There was evidence that this sum of $20.68 was deposited by the father to make good a deficit in the account, he having withdrawn from time to time sums of money which had been carried by the bank to the debit of the account.  These sums, when the last payment to him was made, namely, on July 18, 1870, amounted in all to $510, and this deposit of $20.68 was necessary to balance the account.  It is manifest that there was evidence for the jury that the father intended to give to the plaintiff the money he deposited in her name.  There was also evidence that the plaintiff never authorized the payments made to the father from this account, and that she first knew that these payments had been made to him in the fall of 1884.  The plaintiff was born on December 27, 1857.  Her father, George A. Allen, died on August 27, 1874, and her mother, Louise B. Allen, died on July 7, 1888.  The mother was appointed guardian of the plaintiff on March 16, 1875, and, it seems, remained her guardian until the plaintiff reached her majority, which was on December 26, 1878.  The writ is dated June 10, 1889.

It has been contended that the defendant has a defence under what is now the last clause of the Pub. Sts. c. 116, § 29, which is as follows : " Money deposited in the name of a minor may, at the discretion of the trustees or committee of investment, be

paid to such minor, or to the person making such deposit; and the same shall be a valid payment." This was taken directly from the St. of 1876, c. 203, § 18; but the same provision was contained in the Gen. Sts. c. 57, § 154, and was originally enacted by the St. of 1855, c. 361. It has been continuously in force since its original enactment, and was therefore in force when the deposits and the payments in this case were made, and must be taken to be a part of the contract which the bank made when it received the deposits. There was evidence that nearly all the payments were made to the father of the plaintiff, either by Joel C. Allen or by Alfred L. Burditt, both of whom were at the time members of the board of investment. This statutory provision was plainly enacted for the benefit of the banks. It enabled them to pay money deposited in the name of a minor without requiring that a guardian be appointed to receive it, or that a suit be brought in the name of the minor by a guardian or next friend. If the minor deposited the money, the statute authorizes the payment only to the minor; if some other person deposited the money in the minor's name, the statute authorizes the payment of the money either to the minor or to the person making the deposit. Independently of this statute, the bank had no right to make the payments to the father, if the deposits were absolutely the property of the plaintiff, even if the father had made the deposits. See *Miles* v. *Boyden*, 3 Pick. 213.

It is contended that, in order to bring this case within the statute, it is necessary that the trustees or committee of investment as a board should have authorized the payments. The statute does not give to the minor any right to intervene and be heard when the trustees or committee of investment proceed to determine whether they will act under the statute. The intention is to give to the governing board of the bank this power as a means of administering the affairs of the bank. If the treasurer should act under the statute, without authority, there is no reason why the trustees or committee of investment should not have the right to ratify what he had done, with the same effect as if they had originally authorized it. This concerns only the regulation of the affairs of the bank, and not the rights of the minor. If the trustees of the bank treat payments made to the father by the treasurer as valid payments, this is evidence

of ratification; and if the bank in this suit sets up that the payments are valid, we think that it is not open to the plaintiff to object that they were not originally authorized by the trustees or committee of investment. But payments could be made to the father only to the amount of the moneys which he deposited in the name of the plaintiff. There was some evidence that small portions of the moneys deposited were deposited by the plaintiff herself; and even if the evidence of payments to the father should be taken to be true, the court could not properly rule that the plaintiff, by reason of this provision of the statute, could not maintain her action for any part of her claim.

Whether the statute of limitations is a bar to this action depends upon the time when the statute began to run against the claim. The by-laws of the bank provide: "Any money may be withdrawn on the third Wednesday of January, April, July, and October; and the treasurer may pay any depositor who applies in any other Wednesday for his interest, or capital, or any part thereof, if the money received on that day shall be sufficient, and one week's notice shall be given; but in all cases where more than one hundred dollars is to be withdrawn, three months' notice shall be given to the treasurer." One of the rules and regulations of the bank is as follows: "The treasurer is authorized to make payments on demand on any business day; nevertheless, he may require three months' notice, if, in his judgment, the condition of the bank requires such notice."

A depositor in a savings bank becomes a creditor of the bank, although the promise of the bank is not a promise to pay in full at all events. In some aspects, the depositors must be regarded as *cestuis que trust*, and the bank as a trustee. *Reed* v. *Home Savings Bank*, 130 Mass. 443. *Lewis* v. *Lynn Institution for Savings*, 148 Mass. 235, 245. *People* v. *Mechanics & Traders' Savings Institution*, 92 N. Y. 7.

The first formal demand appears to have been made for the plaintiff by her husband on May 28, 1889, although there was evidence of a conversation in the fall of 1884 between Alfred L. Burditt, then the treasurer of the bank, and the plaintiff and her mother, in which the plaintiff was told that all the money had been withdrawn by her father; and in the fall of 1888, the plaintiff was shown the accounts, and the record of the pay-

ments to her father, and her father's signature to the receipts. These occurrences were all within six years of the date of the writ.

Joel C. Allen was the brother of the father of the plaintiff, and was the treasurer of the bank from its organization, in 1867, until January, 1871. Alfred L. Burditt, a witness for the defendant, testified that he became secretary and general assistant to Joel C. Allen at the time of the organization of the bank in 1867, and so remained until he was appointed treasurer, in 1871; that he had remained treasurer ever since; that the deposit-book was returned to the bank and surrendered on December 1, 1870; that it remained in the possession of the bank until the summer of 1876 or 1877, " when Joel C. Allen came to the bank one day with Louise B. Allen, and asked for the deposit-book. It was handed to him, and with it he went over account 221 [being the account in question] with Louise B. Allen, and explained to her all the payments. The witness was present at the time of this explanation to Mrs. Louise B. Allen. The bank-book was not returned to the bank, and the witness has not seen it since." The contention of the defendant is, that this was in effect a statement to the guardian of the plaintiff that the money had all been paid to the plaintiff's father, and that the bank then denied any liability to the plaintiff, or to her guardian, and that therefore the plaintiff's cause of action accrued immediately, without any further demand, and that, as more than six years had elapsed after the plaintiff attained her majority before the action was brought, the action is barred.

But the plaintiff was entitled to go to the jury upon the truth of this testimony of Burditt, for the truth of it was not admitted by her. The mother was dead at the time of the trial, and the plaintiff testified that, until the fall of 1888, she never knew how the account stood at the bank, and that she was never notified by the bank prior to the fall of 1888 that the bank would not pay her the amount of the deposits, and it does not appear that she had any knowledge of the interview between her mother and Joel C. Allen, in 1876 or 1877. Even if this testimony were admitted to be true, it does not purport to be an interview between the guardian and the officers of the bank. Joel C. Allen was not then an officer of the bank. There was some testimony that the

plaintiff or her guardian thought that Joel C. Allen had misappropriated the money, and that this interview was had between Joel C. Allen and the guardian for the purpose of showing to her that he had not misappropriated the money, but had paid it, while he was treasurer of the bank, to her husband, the father of the plaintiff. Although the witness was present at the time of the explanation, and he was then the treasurer of the bank, there does not appear to have been any conversation between him and the guardian, nor does it appear that the question of the liability of the bank to the plaintiff or to her guardian was discussed.

The necessity of making a demand, or of giving notice that payment will be demanded, before a depositor brings a suit against a savings bank to recover the amount of a deposit, is required by the regulations of the bank for its own protection. The bank may waive such demand or notice: *Townsend* v. *Webster Five Cents Savings Bank*, 143 Mass. 147. But when a bank sets up in its own defence, not the want of a demand or notice, but the fact of a demand or notice, and the expiration of six years before action brought, it is necessary for the bank to show something in the nature of a denial or repudiation of liability on its part. A depositor may demand payment of his deposit, and thereafter waive it, or not press it, and, unless the bank in some manner gives him notice that it denies its liability to him, the fact of the demand and the expiration of six years ought not to bar his action, because money is deposited in a savings bank to be invested by the bank, and the deposits are often permitted to remain for many years. In the case of trusts the rule has been stated to be, that the statute of limitations does not begin to run in favor of the trustee against the *cestui que trust* until the trustee has repudiated the trust, and knowledge of the repudiation has come home to the *cestui que trust*. *Merriam* v. *Hassam*, 14 Allen, 516. *Childs* v. *Jordan*, 106 Mass. 321. *Jones* v. *McDermott*, 114 Mass. 400. *Davis* v. *Coburn*, 128 Mass. 377. *French* v. *Merrill*, 132 Mass. 525.

We think a somewhat similar principle applies to the case at bar, and that the statute does not begin to run in favor of the bank until there has been something equivalent to a refusal on the part of the bank to pay, or a denial of liability. The testi-

mony of what took place at the interview between the guardian and Joel C. Allen, in the summer of 1876 or 1877, certainly does not necessarily, as matter of law, amount either to a demand on the bank, or to a denial of liability by the bank. If it had been understood by the guardian as a demand on the bank, and an absolute refusal by the bank to pay the amount of the deposit, an action would immediately have accrued to the plaintiff, to be brought by her guardian or next friend. It was the duty of the guardian to sue for all debts due to the ward. Pub. Sts. c. 139, § 29. The ward, being an infant, would still have had six years after she reached her majority to bring an action (Pub. Sts. c. 197, § 9), but more than six years after she reached majority had expired before this action was brought. If there was a denial of liability by the bank made to the guardian during the minority of the ward, it may be that there is no rule of law which requires that this should be renewed to the ward after the guardianship has ceased. If the guardian has been negligent in not bringing an action, the guardian or her estate may be liable (see *Pierce* v. *Prescott*, 128 Mass. 140) ; but as a denial of liability to the guardian entitles the ward at once to bring an action, it may be that the cause of action accrued at the time of such a denial, if there were one in this case.

But because there was evidence for the jury that the deposits were the property of the plaintiff, and no facts were conceded which necessarily, as matter of law, constituted a defence to the whole of the plaintiff's claim, there must be a new trial.

Apparently, the statements of the father when he made the deposits were competent upon the question whether they were intended by him as a gift to the plaintiff, and we cannot say that the evidence concerning the other account of the bank with the plaintiff was wholly immaterial.

*New trial ordered.*