MARVIN P. ROBINSON & others *vs.* CHARLES L. ROBINSON, administrator.

Hampden. September 28, 1898. — May 16, 1899.

Present: HOLMES, KNOWLTON, BARKER, & HAMMOND, JJ.

*Statute of Limitations — Presentment of Claims to Register of Probate for Allowance against insolvent Estate — Dower — Widow's Share of Rents — Statute — Agreed Facts — Inference.*

The statute of limitations, Pub. Sts. c. 197, § 1, does not run upon a claim of one tenant in common against another for a just share of the profits of land, when there has been no demand and no termination of the tenancy or of the defendant's management of the land, or any other event to change the relations between the two; and the right of remaining tenants is not affected by the sale of other shares.

Where one tenant in common receives rents and profits on the one side, and on the other pays not merely for repairs, insurance, etc., but for taxes, in respect of which he has a personal claim against his cotenants, the account is "a mutual and open account current" within the saving of Pub. Sts. c. 197, § 8.

Leaving claims with the Register of Probate, and his indorsement thereon that they were presented for allowance within two years from the filing of the administrator's bond, is equivalent to beginning suit, and avoids the bar of the special statute of limitations, Pub. Sts. c. 136, § 9.

Although inferences cannot be drawn by this court upon an agreed statement of facts, yet, if the statement can be construed to import a material fact which would be the fair inference from the facts stated, it will be so construed.

APPEAL, by Albert P. Chapin, Laura A. Robinson, and Marvin P. Robinson, from the partial disallowance of claims against an insolvent estate in the Probate Court. By a decree, dated July 21, 1898, the court allowed the claim of Chapin for $244.28,

of Laura A. Robinson for $44.28, and of Marvin P. Robinson for $1.64. Each claimed the sum of $10,033.33.

The case was submitted to this court upon the following agreed statement of facts.

On May 6, 1896, Charles L. Robinson was appointed administrator of the estate of Ethan C. Robinson, who died on April 8, 1896, and gave bond approved on May 11, 1896, and on June 2, 1896, gave notice of his appointment, and filed an affidavit thereof. After having filed an inventory of the estate, on April 14, 1897, he represented the same to be insolvent, and on May 15, 1897, it was decreed that the court would receive and examine claims of creditors, six months from the date of the decree being allowed creditors to present and prove their claims, and the administrator being ordered to notify creditors that the court would receive, hear, and examine claims on June 2, 1897, and on November 3, 1897.

The court received, heard, and examined claims upon these dates, and at various other times by continuance, until April 16, 1898.

On May 7, 1898, Marvin P. Robinson, Laura A. Robinson, and Albert P. Chapin, each left with the Register of Probate, for the purpose of allowance, a written statement of their claims against the estate of said Ethan C. Robinson. The statement filed by Marvin P. Robinson was in the following form:

" Estate of Ethan C. Robinson, May 7, 1898. Charles L. Robinson to Marvin P. Robinson, Dr. For one third share of rents received as tenant in common for use of said Marvin P. Robinson :

| | |
|---|---|
| From Feb. 1869, to Feb. 1874, 5 years . . | $3,333.33 |
| From Feb. 1874, to Feb. 1889, 15 years . . | 6,000.00 |
| From Feb. 1889, to Feb. 1896, 7 years . . | 700.00 |
| | 10,033.33 " |

The statements of the claims of Laura A. Robinson and Albert P. Chapin were identical in form, except that the words " To Laura A. Robinson, Dr." and " To Albert P. Chapin, Dr." were inserted respectively in place of the words, " To Marvin P. Robinson, Dr."

These statements were received by the Register, and in-

dorsed with the words, " Presented for allowance, May 7, 1898. Attest: Samuel B. Spooner, Register." This indorsement was made without any order of the court. On the day on which the petition hereinafter mentioned was presented to the court, Albert P. Chapin, Laura A. Robinson, and Marvin P. Robinson were informed by the court that their claims must be presented for proof within two years from the date of the approval of the administrator's bond, and were informed when said two years would expire.

On May 9, 1898, the court granted a petition of Albert P. Chapin and Laura A. Robinson, decreeing that the time for the presentation of claims for allowance be extended to May 26, 1898, and on that day the claims of Marvin P. Robinson, Laura A. Robinson, and Albert P. Chapin were presented to the court, and a hearing was had, which was subsequently continued from time to time until July 2, 1898.

J. Smith Robinson died in the year 1869, intestate, owning certain real estate in Springfield, known as the Nayasset House. He left a widow, Amelia Robinson, and as his only heirs his children, Marvin P. Robinson, Ethan C. Robinson, Henry S. Robinson, and Olive A. Dillaber. Henry S. Robinson died intestate, and without issue, on April 10, 1870, but leaving a widow, Josephine. After the death of Henry S. Robinson, the Nayasset House was occupied by tenants, and the rent was collected by Ethan C. Robinson, and sundry payments were made by him for taxes, water rents, insurance, repairs, and interest on a mortgage for $6,600 upon the property, given by J. Smith Robinson in his lifetime, which mortgage remained undischarged until January 3, 1891, and for a few other incidental expenses. The taxes were assessed to the heirs of J. S. Robinson. There was no evidence of the receipt by Ethan C. Robinson of any rent prior to the death of Henry S. Robinson.

On October 16, 1871, Olive A. Dillaber conveyed all her interest in the Nayasset House property to Albert P. Chapin, an uncle of Ethan C. Robinson. Books of account were kept by Ethan C. Robinson, wherein were entered an account of money received by him as rent of the property, and the payments made by him for taxes, water rents, insurance, repairs, interest on mortgage, and incidental expenses. No conversations ever took place between Ethan C. Robinson and said

Marvin P. Robinson, or between said Ethan C. Robinson and said Albert P. Chapin, or between said Ethan C. Robinson and said Laura A. Robinson, in regard to an accounting concerning the Nayasset House property, and no demand was ever made by any of them upon said Ethan C. Robinson for an accounting, and no balance of accounts was ever struck on the books. It appeared by the books that between April 10, 1870, the time of the death of Henry S. Robinson, and October 16, 1871, the time of the conveyance by Olive A. Dillaber to Albert P. Chapin, the amount of rents received by said Ethan C. Robinson was $3,878.08, and the amount paid out by him for taxes, etc. was $1,275.96, leaving a balance of $2,602.12. If Amelia Robinson, the widow of J. Smith Robinson, was, under the provisions of Gen. Sts. c. 90, § 7, (Pub. Sts. c. 136, § 9,) entitled to one third of the rents, issues, or profits of the Nayasset House, (no evidence having been introduced that any person had objected thereto,) the shares of the different persons to whom the balance belonged were as follows (a few cents having been disregarded in making computations):

" First Period.   Amelia, 1-3 . . . . . $867.37
                  Amelia, 1-32 . . . .    54.22
                  Henry's widow, 1-8  .  216.84
                  Marvin, 9-32 . . . . .  487.89
                  Ethan, 9-32 . . . . .   487.89
                  Olive, 9-32 . . . . .   487.89
                                        _____
                                        $2,602.10 "

If Amelia Robinson was not entitled to one third of the rents and profits, the shares of the several persons to whom the balance belonged were as follows:

" Amelia, 1-32 . . . .  $81.31
  Marvin, 9-32 . . . .   731.79
  Ethan, 9-32 . . . .    731.79
  Olive, 9-32  . . . .   731.79
  Henry's widow, 1-8 . .  325.26
                        _____
                        $2,601.94 "

On February 8, 1881, Marvin P. Robinson conveyed his interest in the Nayasset House to Catherine Hall. It appeared by the books that between October 16, 1871, the time when

Olive A. Dillaber conveyed her interest to Albert P. Chapin, and February 28, 1881, the time when Marvin P. Robinson conveyed his interest to Catherine Hall, the amount of rent received by Ethan C. Robinson was $13,176.33, and the amount paid out by him for taxes, etc., $6,671.89, leaving a balance of $6,504.44. If Amelia Robinson was entitled to one third of the balance, the shares of the several persons entitled thereto were as follows (a few cents being disregarded in making computations):

" Second Period. Amelia, 1-3  . . . . . $2,168.14
                 Amelia, 1-32 . . . .    153.50
                 Henry's widow, 1-8  .   542.03
                 Ethan, 9-32  . . . . . 1,219.50
                 Marvin, 9-32 . . . . . 1,219.50
                 Albert P. Chapin, 9-32 1,219.50
                                       _____
                                       $6,504.17 "

If Amelia Robinson was not entitled to one third of said balance, the shares of the several persons entitled thereto were as follows:

" Third Period. Amelia, 1-32 . . . . .  $203.26
                Henry's widow, 1-8  .    813.05
                Marvin, 9-32 . . . . . 1,829.34
                Ethan, 9-32  . . . . . 1,829.34
                Albert P. Chapin, 9-32 1,829.34
                                      _____
                                      $6,504.33 "

On May 2, 1881, Catherine Hall conveyed her interest in the Nayasset House to Laura A. Robinson. It appeared by the books that between February 28, 1881, and May 2, 1881, no rent was received by Ethan C. Robinson, but that one payment of $30 was made by him for insurance.

Amelia Robinson died on November 10, 1890. It appeared from the books that between May 2, 1881, the time of the conveyance to Laura A. Robinson, and November 10, 1890, the amount of rents received by said Ethan C. Robinson was $4,743, and the amount paid out by him for taxes, etc. was $2,736.58, leaving a balance of $2,006.42, all of which preceded April 8, 1890, except the receipt of $25 rent and a payment of $102.92

for taxes.   If Amelia Robinson was entitled to one third of the balance, the shares of the several persons entitled thereto were as follows:

"Fourth Period.  Amelia Robinson, 1-3   .  $668.80
                 Amelia Robinson, 1-32  .    41.80
                 Henry's widow, 1-8   .  .   167.20
                 Ethan, 9-32 . . . . .   .   376.20
                 Laura, 9-32 . . . . .   .   376.20
                 Albert P. Chapin, 9-32 .   376.20
                                           _____
                                           $2,006.40 "

If Amelia Robinson was not entitled to one third of the balance, the shares of the several persons entitled thereto were as follows:

                 Amelia Robinson, 1-32  .  $62.70
                 Henry's widow, 1-8   .  .   250.80
                 Ethan, 9-32 . . . . .   .   564.30
                 Albert P. Chapin, 9-32 .   564.30
                 Laura, 9-32 . . . . .   .   564.30
                                           _____
                                           $2,006.40 "

Amelia Robinson died intestate, leaving no husband, and as her only heirs her children, Marvin P. Robinson, Ethan C. Robinson, and Olive A. Fitzgerald, formerly Olive A. Dillaber. It appeared from the books that between November 10, 1890, the time of the death of Amelia Robinson, and April 8, 1896, the time of the death of Ethan C. Robinson, the amount of rent received by Ethan C. Robinson was $1,000, and the amount paid out by him for taxes, etc. was $842.33, leaving a balance of $157.67.   The shares of the several persons entitled to the balance were as follows (a few cents being disregarded in making computations):

"Fifth Period.  Ethan, 28-96 . . . . . . $45.92
                Laura, 27-96 . . . . .    44.28
                Albert, 27-96 . . . . .   44.28
                Henry's widow, 1-8 . . .  19.68
                Marvin, 1-96 . . . . .     1.64
                Olive, 1-96   . . . . .    1.64
                                         _____
                                         $157.44 "

Except during the earlier portion of the period covered by the accounts in the books, considerable labor would have been necessary in order to make out a correct account in regard to the property, and until the death of Ethan C. Robinson there was uncertainty among the parties as to the exact interests of each in the property. It appeared from entries in the books between April 10, 1870, and October 16, 1871, that there was paid by Ethan C. Robinson to Amelia Robinson at various times the sum of $1,439 ; and that between October 16, 1871, and March 3, 1877, at various times the sum of $2,920.84, and that various payments were made to Amelia Robinson between 1883 and the time of her death, amounting to $404. But it did not appear for what purpose these payments were made, or upon what account, except that the account of payments was contained in the same books as the accounts relating to the property, and that the payments in 1883 and afterwards are on the same pages, and interspersed with the items of payments made on account of the property, the other payments being distinct and separate.

With respect to the payments for repairs, etc. on the property above mentioned, at no time since April 10, 1870, has the period of six years intervened between any two items.

*J. F. Stapleton, Jr.,* (*J. B. Carroll* with him,) for the appellants.

*F. H. Stebbins,* for the appellees.

HOLMES, J. The most important question in this case is whether the statute of limitations, Pub. Sts. c. 197, § 1, runs upon a claim of one tenant in common against another for a just share of the profits of land, when there has been no demand and no termination of the tenancy or of the defendant's management of the land, or any other event to change the relations between the two.

The liability arises from St. 4 & 5 Anne, c. 16, § 27, which gave an action of account to one tenant in common against the other as bailiff for receiving more than comes to his just share or proportion. However it may have been in its origin, this liability to an action of account long has been regarded as different from bailment on the one side, (Y. B. 20 Hen. VI. 16, and F. N. B. 116, Q. n. (d),) and from debt or an absolute liability for money on the other. Holt, C. J., *Anon.* 11 Mod. 92. See

*Farrington* v. *Lee*, 1 Mod. 268; 2 Mod. 311; *S. C. nom. Harrington* v. *Leech*, Freem. 229, 234, 242. It seems more like the accountability of a trustee, — a liability for an identified fund, which would be discharged by showing that the fund had been lost without the accountant's fault, as is clearly stated in a case between tenants in common by Parke, B. *Thomas* v. *Thomas*, 5 Exch. 28, 33. See Fitz. Abr. Accompt, pl. 40; *Woodlife's case*, Moore, 462; *S. C.* Owen, 57; Co. Lit. 89 a. The relation between the parties is fiduciary. An action does not lie without privity, which in this instance is created by the statute. *Sargent* v. *Parsons*, 12 Mass. 149, 152. *Bracebridge's case*, 1 Leon. 264, 266. *Tottenham* v. *Bedingfield*, Owen, 35, 83; *S. C.* 3 Leon. 24. *Thomas* v. *Thomas*, 5 Exch. 28, 33. Of course, as in other cases of fiduciary relations, the liability may be made absolute by the accountant's appropriating the fund or repudiating the trust; as if the tenant in common wrongfully cuts and sells trees. *Miller* v. *Miller*, 7 Pick. 133. So, after demand and refusal, debt or assumpsit would lie, and the statute of limitations would begin to run. Frowike in Keilwey, 77 a, 77 b, pl. 25. Langdell, 2 Harv. Law Rev. 253, 254, where the subject is discussed with Mr. Langdell's usual ability. But it is plain from the nature of the duty created by the statute of Anne that the time of limitation ought not to begin to run when there has been no demand or refusal, and nothing to notify the plaintiff that the defendant has repudiated the relation, or that it has come to an end. *Jolly* v. *Bryan*, 86 N. C. 457. See *Dickinson* v. *Leominster Savings Bank*, 152 Mass. 49, 52, 54; *Campbell* v. *Whoriskey*, 170 Mass. 63.

The action of account has been abolished in Massachusetts, and therefore an action of contract necessarily is resorted to. We are not aware that the attention of the court ever has been directed to the question whether a demand and refusal generally are necessary in this class of cases. But the nature of the duty created by the statute is not affected by the disappearance of the action, and what follows from the nature of the duty we already have stated. Cases where by mutual understanding the relation has terminated, and nothing remains to be done except to pay over a balance, have no application. *Jones* v. *Harraden*, 9 Mass. 540, n. *Currier* v. *Hallowell*, 158 Mass. 254, 256. So

*Clark* v. *Moody*, 17 Mass. 145, stands on its own circumstances, and in *Vail* v. *Durant*, 7 Allen, 408, 410, was invoked as authority for the right of a factor to mingle the proceeds of goods consigned to him with his own funds, and the correlated proposition that he becomes at once a debtor for such proceeds. In this view, it has nothing to do with the liability of the defendant as bailiff. See *Lincoln* v. *Parr*, 2 Keble, 781. In *Dickinson* v. *Williams*, 11 Cush. 258, the tenancy in common continued when the action was brought, but the transactions out of which the claims arose were at an end. It was stated by the court that " this judgment, when rendered, will be a final settlement between the parties."

Apart from what has been said thus far, we are of opinion that, as was held in *Dickinson* v. *Williams*, just cited, the account was " a mutual and open account current " within the saving of Pub. Sts. c. 197, § 8. The defendant's intestate, Ethan C. Robinson, received rents and profits on the one side, and on the other paid, not merely for repairs, insurance, etc., but for taxes, in respect of which he had a personal claim against his cotenants. *Dewing* v. *Dewing*, 165 Mass. 230.

We are of opinion that nothing has barred the claims of the present tenants in common. It is true that some tenants have sold their shares, and that if an account had been sought in equity, the parties to the bill would have varied according to the tenants during the period in question. But such collateral changes do not affect the continuity of the remaining tenants' substantive rights, and we see no reason why they should affect their remedies. One tenant in common has a right to sell his share when he likes, and may do so without the knowledge of other tenants. The sale does not dissolve the relation between the remaining tenants, as in the case of a partnership. The fact that different bills in equity may be required in order to take all the accounts that are necessary to settle the whole business does not prevent the account between two continuing tenants from being one account from beginning to end.

The two years from the filing of the administrator's bond within which a suit must be begun in order not to be barred by the special statute of limitations, Pub. Sts. c. 136, § 9, expired on May 11, 1898. Statements of the appellants' claim

were left with the register, and indorsed by him as presented for allowance on May 7, 1898. We are of opinion that this was equivalent to beginning suit, and avoided the bar. See Pub. Sts. c. 137, §§ 2–4, 10; *Guild* v. *Hale,* 15 Mass. 455, 458; *Aiken* v. *Morse,* 104 Mass. 277; *Tarbell* v. *Parker,* 106 Mass. 347, 349; *Morrell* v. *Old Colony Railroad,* 158 Mass. 69.

The statements as to the payments to the widow are somewhat vague. But while we cannot draw inferences of fact upon an agreed statement, we must use reasonable discretion in interpreting what is admitted. The only reasonable understanding of the entries is that the widow was paid as provided by Pub. Sts. c. 124, § 13. If we were not to give that interpretation we should discharge the statement, and, if the same facts came before us as evidence, should draw an inference of fact to the same effect as we now construe the statement.

*Decree accordingly.*