# DECISIONS

OF THE

# COURT OF APPEALS

OF KENTUCKY.

SUMMER TERM....1849.

## Otwell *vs* Cook.

### ERROR TO THE SCOTT CIRCUIT.

*Set-off.*

PET. & SUM.

*Case* 75.

June 5.
Case stated.

| 9m357 |
|100  401|

| 9bm357 |
|131  758|

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

COOK brought this action by petition and summons, on a note for $750, executed by Otwell to Scarce, on the 20th of September, 1847, due one day after date, and assigned to Cook on the 2d of October, 1847. Otwell pleaded by way of set-off, a joint and several note for $350, executed by Scarce and one Giltner, to A. Haley, dated and due in November, 1835, and assigned to Otwell on the 22d of September, 1847, which, together with an alleged payment of $362 37 cents, he offers to set-off, &c. &c. By agreement, each party had leave to prove whatever might have been specially pleaded or replied; and the law and fact having been submitted to the Court, a judgment was rendered for the plaintiff disallowing the note relied on as a set-off, but allowing the payment of $362 37, which had been credited on the note sued on. In the revision of this judgment the sole question presented is, whether the note of Scarce

The obligor may set off the note of the obligee acquired before the obligee had parted with his note. *Triplett vs Bradley*, (6 *Monroe*, 355) Or he may set off the joint and several note of the obligee, and another acquired under like circumstances.—*Dunn* vs *West*, (5 *B. Monroe*, 376.) And it constitutes no good objection that the note offered to be set off is held in trust for a third person—he has the legal right to use it—no violation of trust appearing.

and Giltner, held by Otwell, was an allowable set-off against Otwell's note to Scarce held by Cook.

Upon the face of the pleadings and on the facts already stated, the questions are; 1st. Whether Otwell, having acquired the note of Scarce while his own note was held by Scarce as payee, can set it off against the subsequent assignee of Scarce; and, 2d. Whether if he can thus set-off the separate note of Scarce, he can avail himself, in the same manner, of the joint and several note of Scarce and Giltner. Each of these questions has been decided in the affirmative. The first in the case of *Triplett* vs *Bradley*, (6 *Monroe*, 355,) and the last in the case of *Dunn* vs *West, &c.*, (5 *B. Monroe*, 376,) and other cases.

But under the leave to give special matter in evidence, it was proved that Otwell did not hold the note for his own benefit, but that Giltner, one of the obligors therein, being the surety of Scarce, and fearing loss from his suretyship in this note, had, by executing his own note with surety to Haley, the payee of the note in which he was bound with Scarce, procured the assignment of this note to Otwell, for the very purpose of having it set-off by Otwell against his note to Scarce, and upon Otwell's promise to procure the set-off if he could, and in case of success, to pay to Giltner such sum as might be thus set-off. And it is contended that under these facts, Otwell cannot set-off the note of Scarce and Giltner in this action, either because by the effect of the transaction stated, the note has been paid by Giltner, one of the obligors, and ceased to be a subsisting demand against Scarce, or because if the note be a subsisting demand, it is held by Otwell not as his own or for his own benefit, but exclusively for the use of Giltner, and without any interest on his own part.

As Giltner executed the new note to Haley as the consideration for the assignment of the original note to Otwell, to be used as a set-off against Otwell's debt to Scarce, and in this way to operate for his own benefit and indemnity, it would be subversive of the express intent of the parties, and of the obvious import of the transaction, to say that the original note was thereby

extinguished. The very object of the arrangement was to keep it alive for the benefit of Giltner; and its form was not such as necessarily and *ipso facto* to extinguish the note. The amount of the debt has, it is true, been paid or secured to the payee of the note, and perhaps unconditionally. But so it would have been if he had sold it to a stranger for full value and without recourse. And as it was not illegal nor inequitable for Giltner to secure himself by such an arrangement, and as on the contrary, equity, even without an express agreement, will often sustain, for the benefit of a surety, a note or judgment which he has satisfied, we think it would be a violation of equity not required by any inflexible rule of law, to give to this arrangement the effect of extinguishing the note as a demand against Scarce. Then the propriety of allowing the set-off in this case, is no more affected by the fact that the assignment to Otwell was procured by Giltner, the surety and co-obligor in the note, and for his benefit, than if it had been procured by a stranger for his own benefit. And the question is, whether it is any answer to the plea of set-off by Otwell, who has the legal title to the note, to say that he holds it in trust for another, who had it vested in him for the very purpose of being thus set-off, and under his promise to pay the *cestui que use* the amount which should be set-off. It is true that Otwell has to pay the same amount whether set-off is allowed or not. If it is disallowed, he pays it to Scarce or his assignee, and Giltner pays Scarce's debt to Haley and loses the indemnity which he had provided. If the set-off is allowed, Otwell's debt to Scarce pays Scarce's debt to Haley, and Giltner, his surety, is saved from loss. If Scarce still retained the note sued on, we think there could not be a question as to the propriety of allowing the set-off. But if it was a legal set-off against him while he in fact, retained the note of Otwell, then by force of the very statute which enabled him to assign Otwell's note, it remained a legal set-off against that note in the hands of the subsequent assignee.

Assuming that the note offered to be set-off is still subsisting, the whole force of the answer to the plea

consists as already shown, in the fact that although the defendant holds the legal title in the note, the beneficial interest is in another. But will a Court of law look to this outstanding equity for any other purpose than to protect it or to do justice? Or rather, will a Court of law take notice of this outstanding equity for the exclusive purpose of destroying it? The cases in which this Court has sanctioned the allowance of a set-off of a debt against the *cestui que use*, where the suit was in the name of the legal holder of the note as nominal plaintiff: (3 *Monroe*, 19; 3 *Marshall*, 351,) indicate a negative answer to these questions. But here, although the defendant offering the set-off, holds it only as trustee, he holds it for the very purpose of the set-off, which is in fact for the exclusive benefit of the *cestui que use*. Having the legal title he has the legal right to make the set-off, and will be allowed to do it unless the interest of the beneficiary should forbid it. But the interest of the beneficiary requires it, and therefore, the law and the equity concur in allowing it. The case of *Fair, &c.* vs *McIvor*, (16 *East*, 130,) relied on to prove that the defendant pleading a debt against the plaintiff as a set-off, must be in good faith, the beneficial owner of the debt, was manifestly decided upon the bankrupt laws of England and not upon the general law of set-off. It is considered, therefore, as being entitled to little, if any weight upon the present question, which arises under our statutes of set-off and assignments; and under these statutes we are satisfied that the plaintiff in this case having acquired the note sued on after the defendant acquired the note offered as a set-off, cannot resist the set-off on the ground that this latter note was assigned to the defendant for the benefit of a third person, and especially when it appears that the beneficiary concurs in the set-off, and that the purposes of the trust can in no other way be accomplished.

Wherefore, the judgment is reversed and the cause remanded for a new trial in conformity with this opinion.

*Robinson & Johnson* for plaintiff; *Woolly & Kinkead and Shy and Beck* for defendant.