JUDGE DUVALL
delivered the ofinion of the court:
McMurtry held a claim, due by account, against Graham, amounting to $1,262 71, for castings, &c., furnished by the former to the latter. At the foot of the account is an order from McMurtry to Graham, in favor of Tilford & Barkley for the whole amount, which order is without date.
This action was brought by Tilford & Barkley and McMur-try against Graham, upon the account, the two former claiming the demand, as assignees of McMurtry, under the order.
Graham answered, relying, among other matters of defense, upon a note which had been executed by McMurtry to Harris & Co., for $1,550, dated November 14th, 1855, payable four months after date, and which had been assigned by the payees to Graham, on the 24th December, 1855, before the latter had any notice of the assignment or transfer of the account sued on; he avers that McMurtry is insolvent, and was insolvent when the account was assigned, by reason of which he would be unable to collect the note when it matured, and therefore, offered to set-off so much of the note as would pay the amount which the plaintiffs might be entitled to on the account.
The appellees replied, contesting Graham’s right to set-off the note against their demand, upon the ground that the same *114 bad not been assigned to him in good faith by the payees, and that he was not in fact the legal owner of it.
The issues thus made were, by consent of the parties, submitted to the court, and judgment was rendered for the plaintiffs for $1,000 — “the court being of opinion that the set-off cannot be allowed for the reason that defendant, C. C. Graham, is not the bona fide holder and owner of the note,” &c.
From that judgment Graham appealed, and insists that the court erred in refusing to allow his set-off.
The testimony shows that the note in question was delivered to Graham by the payees, Harris & Co., and by them assigned in blank, on the 24th of December, 1855, being the day before Graham received notice of the assignment of the account. The terms upon which the note was assigned to, and held by, Graham, are set out in a written agreement, the substance and effect of which is, that Graham was to plead the note as a set-off against the debt of McMurtry, and was to account to the assignors for whatever amount he might be able to make in that way, and to re-assign the balance that might remain; it was further agreed, that although McMurtry should establish a right to recover more than the sum of $1,000, yet that sum was all Graham was to account for.
For the appellees, it was contended that, having procured the note upon the terms and under the agreement stated, the appellant was not entitled to the set-off as relied upon in his answer. And, upon the former argument, this was the only question discussed, and the only point to which the attention of this court was directed.
This question was directly and conclusively decided in the case of Otwell vs. Cook, (9 B. Mon., 358.) It was said in that case, “ that although the defendant offering the set-off holds it as trustee, he holds it for the very purpose of the set-off, which is in fact for the exclusive benefit of the cestui que use. Having the legal title, he has the legal right to make the set-off, and will be allowed to do it, unless the interest of the beneficiary should forbid.” The set-off was therefore allowed, although set up in a legal action, and by a party who had no *115 beneficial interest in tbe demand, but who took the assignment for the sole benefit of the assignor.
But a more formidable objection to the validity of the set-off relied upon in this case, is now for the first time urged, and must, in our opinion, prevail.
The note assigned by Harris & Co. to Graham, for the purposes mentioned, was dated the 14th November, 1855, and was payable four months thereafter. It was assigned the 24th December, 1855, and on the next day Graham was notified of the assignment or transfer of the account to Tilford & Barkley. This action was commenced in January, 1856.
Upon this state of fact, the question arises, was the note in the hands of Graham an available set-off as against the assignees of McMurtry, either at law or in equity ?
That it was not good as a legal set-off, seems not to be disputed.
In the case of Tribble vs. Taul, (7 Mon., 455,) and in numerous subsequent cases, this court has recognized the following as the only grounds of equitable set-off: 1. That the demands are connected, as that one is the consideration of the other; or, 2. That there has been an agreement to set them off; or, 3. That they have been completely liquidated at law; or, 4. That there is some obstacle to the legal coercion of the demand sought to be set-off, as non-residence, insolvency, or the like.
The ground upon which the equitable jurisdiction in this case is sought to be maintained, is the alleged and admitted insolvency of McMurtry. And if this had been a contest between Graham and McMurtry only, the equitable right of the former would have been undoubted, especially as the note which he offered to set-off had matured before he filed his answer.
But the demand of McMurtry against Graham had been assigned to Tilford & Barclay, and this action upon it commenced before the note held by Graham had matured. And it is a well settled principle that an equity, to be available against an assignee, must have existed before notice of the assignment. Accordingly, it has been held that the mere right of set-off, arising from the existence of mutual or unconnected demands, *116 is not of itself an equity. It becomes an equity only in consequence of some additional fact, as insolvency; and if that fact does not exist before notice of the assignment, it follows that its subsequent existence can create no available equity against the assignee. (Wathen’s executor vs. Chamberlin, &c., 8 Dana, 164; Ridgway vs. Collins, &c., 3 Marsh., 412.)
In the case before us, the fact of McMurtry’s insolvency existed, it is true, before notice of the assignment. But there is another fact, of even more consequence in its effect upon Graham’s equity, which did not exist before the assignees because invested with their equity — the maturity of the note on McMurtry in the hands of Graham. It did not mature until the 14th March, 1856 — nearly three months after the assignment of the account, and after Graham had notice of it. It follows that when the latter received notice of the assignment, he had no subsisting demand at all against McMurtry, and therefore could have had no available equity against McMur-try’s assignees. Graham’s legal demand did not accrue until afterwards, and of course his equity founded upon it, accrued at the same time. It is true, that as against McMurtry, this equity, although created subsequently to the institution of the suit, would have been available, just as in the cases cited the subsequent insolvency of the assignor would have entitled the defendant to an equitable right of set-off as between those two. But it is a right which a court of equity will not allow to prevail against the intervening and superior equities of bona fide assignees.
In the case of Lindsay, &c., vs. Jackson, &c., (2 Paige, 585,) the complainants had given two notes to the defendants for $1,500 each, dated in May, 1831, payable in six months, without interest. About the same time the defendants became indebted to the complainants on an acceptance for $4,000 payable the 13th of June. A few days before this acceptance became due, the defendants became insolvent and stopped payment. In July, 1831, the complainants filed their bill to restrain the defendants from transferring or negotiating their notes, and praying that the amount to become due thereon might be set-off or applied in part satisfaction of the $4,000 due on the *117 acceptance. An injunction was granted accordingly, and the order was afterwards affirmed by the chancellor, upon the ground that it would have been inequitable and unjust to permit the defendants to dispose of the notes they held on the complainants, and not then due, thereby leaving the debts which were due from the defendants to the complainants unpaid. “But,” says the chancellor, “it might present an entirely different question, if the defendants’ debt was now due from the complainants who were seeking to compensate it by a claim against the defendants, payable at a future day and he refers to Young vs. Guy, (10 J. B. Moore's R., 193.)
And in the case of Batterton vs. Taylor, (MS. Opinion, Winter Term, 1852,) it was held that a demand against the assignor, not due, cannot be set-off against the demand of plaintiffs (who were assignees) which was due and owing at the commencement of the suit. Nor would the insolvency of the assignor alter the case, even if it appeared that this insolvency existed at the time of the assignment.
Cases might be imagined in which the operation of this principle would result in great hardship; but the same may be said of almost any other general principle. And the mere possibility of such a result should never be allowed to prevent the application of a rule which has been established by authority, and which has the sanction of reason and of policy.
For the reasons indicated, the judgment of the court below, rejecting the set-off, must be affirmed.