CHARLES F. BACON *vs.* ROBERT BACON & others.

Middlesex.   January 16, 1929. — March 7, 1929.

Present: RUGG, C. J., CROSBY, PIERCE, CARROLL, & SANDERSON, JJ.

</div>

*Contract,* What constitutes, Consideration.   *Trust,* Existence of relation. *Tenants in Common.   Interest.   Equity Pleading and Practice,* Parties. *Equity Jurisdiction,* Minority stockholders' bill.   *Corporation,* Officers and agents.   *Fiduciary.*

A master, to whom was referred a suit in equity by one brother against another to require the defendant to transfer to the plaintiff a share of the capital stock of a corporation, found in substance that the defend-

ant had purchased for cash one share in the corporation, which had succeeded to and had purchased the assets of a bankrupt corporation formerly controlled by the father of the plaintiff and the defendant; that according to an oral agreement between the brothers the defendant had conducted negotiations and had procured a loan of money with which he was enabled to purchase the remaining shares of the stock; that later that loan was paid by money procured in part by a mortgage on the plaintiff's home; that the brothers had agreed that the stock so bought should be divided between them equally and that the defendant had not made such a division. The defendant contended that there was no binding agreement with the plaintiff that there should be such a division. *Held*, that the relation of the defendant brother to the plaintiff was that of a fiduciary and a decree was warranted directing the defendant to transfer to the plaintiff one half of the stock so purchased.

In a suit in equity by one of two tenants in common of real estate against the other, it appeared that the defendant had been permitted by the plaintiff to collect the rents and during certain years had not made payments to the plaintiff. The defendant neither in the pleadings nor in the evidence made any claim for services performed in the collection of the rents or because of payments of taxes and insurance and for repairs made by him. The final decree directed the defendant to pay the plaintiff one half the rent so received by the defendant and not remitted to the plaintiff, with interest computed from each year when such rent was received. *Held*, that

(1) The defendant having claimed no allowances, the final decree was correct as to principal;

(2) The usual rule, that a defendant is not chargeable with interest in the absence of an agreement therefor or until there has been a demand for the payment of sums found to be due, applied, and interest should be computed only from the filing of the bill.

A suit in equity cannot be maintained by one stockholder in a corporation for his individual benefit, and not as a minority stockholder for the benefit of the corporation, against the corporation and another stockholder who is the treasurer and a controlling stockholder to establish a claim to a share of money alleged unlawfully to have been paid by the defendant as treasurer to himself although a master to whom the suit was referred found "that the financial affairs of the defendant corporation were so under the control of the defendant [stockholder] that any application for relief by the plaintiff previous to the bringing of this bill in equity would have been an idle ceremony."

BILL IN EQUITY, filed in the Superior Court on June 1, 1922, and afterwards amended, described in the opinion.

The suit was referred to a master. Facts found by the master are stated in the opinion.

The suit was heard on the master's report by *Lourie*, J., by whose order there were entered the interlocutory decree

described in the opinion and a final decree ordering, adjudging and decreeing

"1. That from October, 1910, until 1917, the defendant, Robert Bacon, received rent from the Bacon Felt Company for real estate owned jointly by the plaintiff and said Robert Bacon amounting to $7,540 of which amount the plaintiff is entitled to one half, namely $3,770 and the defendant, Robert Bacon, is ordered to pay the plaintiff the sum of $3,770 with interest from the first day of January following the year that such payments were received by said Robert Bacon to the date hereof at the rate of six per cent per annum, amounting to the total sum of $6,982.55 and execution in common form is to issue therefor in favor of the plaintiff against said defendant Robert Bacon.

"2. That the plaintiff is the owner of fifty shares of the capital stock of the corporation, twenty-five shares of which the defendant, Robert Bacon, wrongfully caused to be issued to himself.

"3. That the defendant, Robert Bacon, is ordered to surrender forthwith to the corporation for cancellation from the shares now held by him, twenty-five shares of the capital stock of the corporation and the defendant, Bacon Felt Company, is hereby ordered to cancel said twenty-five shares and to execute, issue and deliver forthwith to the plaintiff in lieu thereof, a certificate for twenty-five shares.

"4. That from the years 1913 and up to September 15, 1924, there was distributed to the plaintiff and to the defendant, Robert Bacon, as stockholders of the corporation, certain earnings of the defendant corporation; that during this period the defendant, Robert Bacon, received the sum of $93,957.45 and the plaintiff $8,987.44; that the plaintiff is entitled to 50/101 of the amount distributed; that 50/101 of the amount is $41,975.39 and the defendant, Robert Bacon, is ordered to pay the plaintiff the sum of $41,975.39 with interest on the same from the first day of January following the year that such payments were received by him to the date hereof, at the rate of six per cent per annum, amounting to the total sum of $61,879.33 and execution in

common form is to issue therefor, in favor of the plaintiff against said defendant Robert Bacon.

"5. That the vote at the meeting of the directors of the defendant, Bacon Felt Company, held May 7, 1923, providing that the salary of the president and treasurer be fixed at the rate of $20,000 for the fiscal year 1923 is declared null and void, and the defendant, Bacon Felt Company, is ordered to cancel any and all credits of salary credited upon its books as due the defendant, Robert Bacon, under said vote.

"6. That the vote at the meeting of the directors of the defendant, Bacon Felt Company, held March 3, 1924, providing that the salary of the president and treasurer be fixed at the rate of $20,000 for the fiscal year 1924 is declared null and void, and the defendant, Bacon Felt Company, is ordered to cancel any and all credits of salary credited upon its books as due the defendant, Robert Bacon, under said vote.

"7. That the defendant, Robert Bacon, is hereby directed to pay to the plaintiff his costs in the sum of $20.50 as taxed by the clerk and execution in common form is to issue therefor.

"8. That the bill of complaint be and it is hereby dismissed as to the defendant, Ida W. Bacon, without costs."

The defendants appealed from both decrees.

*L. E. Flye,* for the defendant Robert Bacon.

*J. F. Meagher,* for the defendant Bacon Felt Company.

*M. J. Mulkern,* (*H. W. Hardy* with him,) for the plaintiff.

PIERCE, J.   This suit comes before us on appeal of all the defendants from an interlocutory decree directing (1) that the motion to recommit the master's report be denied; (2) that a supplementary motion with requests for rulings that the master's report be recommitted be denied; (3) that the exceptions to the master's report be overruled and the report confirmed; and (4) that the requests of the defendants for rulings upon the motion of the plaintiff for final decree be refused and a final decree entered in a form submitted therewith.   The suit comes before us, also, on the appeals

of Robert Bacon and the Bacon Felt Company from the final decree.

In view of the facts that the original bill, filed June 1, 1922, was superseded by a supplemental bill filed September 15, 1924, that no completed hearing has been had on the original bill and answers thereto, and that the report of the master and the decrees appealed from are based solely on the amended bill of complaint, no reference is made to the frame of the original bill other than to observe that an inspection of it discloses that it was brought in the name of and for the sole benefit of the plaintiff, who alleged therein that he and his brother Robert Bacon, from January, 1908, until the filing of the bill, were engaged in manufacturing and dealing in felt products at a location in Winchester, Massachusetts, formerly owned by their father Charles N. Bacon; that the defendant Robert Bacon, in association with Dwight Smith and Wilfred Smith, organized a corporation under the name of the Bacon Felt Company; that nothing was paid for the stock; that the custody, control and management of the business remained with the plaintiff and his brother; that the transaction was a mere cloak, under which Robert Bacon by fraud concealed what were the profits of the business and fraudulently took profits greater than those given to the plaintiff. The relief sought was a determining of the plaintiff's interest, an accounting by the defendant Robert Bacon and the corporation with the plaintiff, a determination that the defendants were trustees for the plaintiff, or, in the alternative, that a partnership existed between the plaintiff and the defendants.

The amended bill was allowed on September 24, 1924, and the report of the master without the evidence was filed on May 19, 1926. The answer of all defendants admits the allegations of the first five numbered paragraphs of the amended bill, admits paragraphs 12 and 14 of that bill, admits in part and denies in part paragraphs 7, 8, 11, 13, 18, 19, and denies the allegations of the remaining paragraphs of the amended bill, except that it admits that the defendant Ida W. Bacon has been elected and served as president and director of the corporation, one share of the stock previously

in the name of Robert Bacon having been transferred by him to her without consideration.

The admitted or undisputed facts important in the light they cast upon the motives and purposes which directed the subsequent conduct of the plaintiff and defendant Robert Bacon are as follows: The plaintiff and defendant Robert Bacon are the sons of Charles N. Bacon, who for many years prior to 1900 was engaged in the business of felt manufacture, with a place of business at Winchester, Massachusetts. In 1901 he leased the business to the plaintiff, Robert Bacon, and another brother, and under the style of Bacon Brothers they carried on the business until September, 1903, when the property was destroyed by fire. Thereafter the father resumed control of the business, rebuilt the plant and conducted it as a corporation under the name of Charles N. Bacon Felt Works. In February, 1907, the father mortgaged the personal property used in the business and the real estate on which the plant was located to one Dwight Smith, to secure his note of $7,000. In November, 1907, the corporation was adjudged bankrupt, and Dwight Smith, as receiver, and later as trustee, conducted the business as such until May, 1908. The plaintiff had worked in the mill with his father from boyhood, never having worked for any one else, and throughout the various changes since 1900, continued to work in the business, chiefly in the mix room. The defendant Robert Bacon, when the father resumed control of the business after the fire, was engaged in other business until shortly after the appointment of the receiver and trustee in bankruptcy. Thereafter he worked for the receiver and trustee until the receivership ended in May, 1908, receiving the same wages as the plaintiff, namely, $25 per week.

In January, 1908, the father leased to the plaintiff and defendant Robert Bacon the "felt mill," "They . . . to take possession when the premises are turned over by the Trustee in Bankruptcy of Charles N. Bacon Felt Works, Bankrupt, and the rent hereinafter mentioned to then begin. They the said lessees are to pay during the term hereof all taxes, water rates, insurance and repairs of said mill, and

they are also to pay the interest on the mortgages of Seven thousand dollars to Dwight Smith and One thousand fifty-eight and 86/100 Dollars to E. S. Parkhurst & Co. all these charges and expenses in addition to the rent of $100. a month." The plaintiff talked with the father about getting this lease because Robert was not at the time on speaking terms with his father. ". . . there was no agreement between the plaintiff and defendant [Robert] to continue said business upon the discharge of the trustee, but . . . said lease was obtained by plaintiff and defendant in contemplation of the continuance of said business after the discharge of the trustee." The "lease never took effect in possession" and the business was never operated under it.

On May 11, 1908, a new corporation known as the Bacon Felt Company was organized, with an authorized capital of $15,000, consisting of one hundred fifty shares of the par value of $100 each. Only one hundred one shares of the stock were issued at the time of its organization, and these alone are now outstanding. They were issued as follows: thirty-two shares to Dwight Smith for machinery; eighteen shares to Dwight Smith for cash; fifty shares to Wilfred Smith for cash; one share to Robert Bacon for cash. The stock holding continued until October 5, 1910, when the Smiths sold and delivered their hundred shares of stock. The plaintiff knew of the ownership of the business by Dwight Smith as receiver and trustee, and then by the corporation, and that the Smiths owned one hundred shares of stock; he did not know that Robert Bacon owned at least one share; he knew that he, Charles, did not own any part or share of the business up to October 5, and he did not claim to own any. The new corporation continued the same business theretofore conducted by the receiver and trustee in bankruptcy, and the plaintiff and his brother continued to work for said corporation receiving equal compensation and a bonus for services up to May 2, 1910.

On February 24, 1910, Charles N. Bacon conveyed to his two sons the real estate on which the felt business hereinbefore mentioned had always been conducted, under whatever name and by whomever the business was actually owned

and operated, by deed recorded March 5, 1910. On the latter date the Smith and Parkhurst mortgages were discharged and new mortgages were executed and recorded. When the conveyance was given the plaintiff and defendant delivered to their father a paper, by which they promised to make annual payments to their father and mother from the net profits of running the mill. Charles N. Bacon died in 1918 and his wife in 1919. Under the agreement no payments were ever made to either of them.

The conveyance of the real estate on February 24, 1910, by C. N. Bacon and wife to Robert and Charles did not modify the ownership and operation of the business conducted by the Bacon Felt Company. On August 18, 1910, at a special meeting of the company at which all the stockholders were present, and all except Robert Bacon voted, it was voted that it was advisable to cease the manufacturing business, and the treasurer was authorized to cause the cessation of the company's business and to sell the assets of the company. In respect to the sale of the assets of the corporation and the connection of the plaintiff and defendant Robert Bacon therewith, the master finds that "During the summer of 1910 the plaintiff and the defendant Robert Bacon entered into an agreement and understanding to buy the stock of Dwight and Wilfred Smith in the Bacon Felt Company and thereafter said stock was purchased by them." After this vote, effort was made by the treasurer to dispose of the assets of the company to the American Felt Company or to the firm of Willett and Sears, and an actual offer appears to have been received from the latter firm. The plaintiff and defendant Robert Bacon both knew of these efforts to sell the property, and conversations took place between them and Wilfred D. Smith, with reference to the purchase by them of the one hundred shares of stock owned by the two Smiths. These conversations were first made with the plaintiff, and later with both the plaintiff and the defendant Robert Bacon, and with Robert alone. Robert finally made an offer of $18,000 for the one hundred shares, and the offer was accepted. The master finds: "The foregoing purchase of the stock of the said Smiths came about as the result of con-

versations between the said Smiths and the plaintiff and defendant, Robert Bacon, during which it was mentioned that the Smiths had an offer from another concern." He further finds that, in the meantime, Robert had conversations with one Cutting, the president of the Winchester Trust Company, with the result that a check for $18,000, payable to the order of Dwight Smith and dated October 5, 1910, was delivered to the defendant Robert Bacon for the purpose of purchasing the Smith stock; and that the said stock so purchased was delivered to Robert Bacon on or about October 5, 1910; that "The plaintiff had nothing to do with the negotiations with the said Cutting which resulted in the delivery of the check but was kept informed about the matter by the defendant."

The master specifically finds that "In negotiating said loan of $18,000 and in taking over said stock from the said Smiths, the said Robert Bacon acted for himself and the plaintiff under their agreement to buy said stock in equal shares," and he refused to find, as requested by the defendants, that "The borrowing of $18,000 from Mr. Cutting and the purchase with it of the Smith stock October 5, 1910, was done by Robert Bacon for his own account and not in any part as agent or fiduciary for the plaintiff." The stock delivered by the Smiths to Robert Bacon on receipt of the check for $18,000 consisted of the three certificates of stock above described endorsed in blank.

Later in the same month the $18,000 loan was repaid to Cutting by means of a loan from one Murdock for $10,000 and a payment of cash from the funds of the Bacon Felt Company for the balance. As security for the loan of $10,000 the plaintiff and Robert gave Murdock their note for $10,000, secured by a mortgage upon the real estate occupied by the company, and delivered to Murdock as further collateral for said loan the entire issued stock of the company amounting to one hundred one shares. "The $10,000 loan . . . was eventually paid out of the earnings of the corporation." The master finds that the plaintiff, in signing the mortgage, depended upon and acted upon the understanding and agreement between him and Robert

Bacon that they were buying the shares owned by the Smiths, and that upon the purchase of said stock the plaintiff and Robert would become the owners in equal shares of said stock purchased from the Smiths; and he specifically refused to find as requested by the defendants that "The Murdock loan, being in the net amount of $10,000, was arranged entirely by Robert Bacon on his own initiative and the plaintiff signed the papers as an accommodation maker without any previous agreement between him and Robert as to any division of the stock."

On the consummation of the Murdock loan, Robert Bacon caused twenty-five of the one hundred shares formerly standing in the name of the Smiths to be issued to the plaintiff and the plaintiff receipted for these shares. As to this allotment of shares the master finds that the plaintiff receipted for these shares without knowing that only twenty-five shares were issued in his name and that he did not accept the shares without complaint. On the payment of the loan, the stock of the defendant corporation which Murdock held as collateral was returned and came into the possession of Robert Bacon, who has held the same ever since. No stock other than the certificate for twenty-five shares was ever issued to the plaintiff, and until the bringing of the bill he continued to work for the company. From October 26, 1910, until May, 1922, the plaintiff was a director and vice-president, attended all meetings of the board of directors and stockholders, and had access to all books and records of the corporation.

In the meantime, in order to furnish additional funds for the company, Robert Bacon negotiated with the Winchester Savings Bank for a loan on the home of the plaintiff. The result was that the plaintiff and his wife deeded the property to Robert Bacon, who executed a mortgage on the property for $3,000 to the savings bank; the money so received was paid to the Bacon Felt Company on October 28, 1910. As respects this transaction the master finds that the $3,000 was not used for the purchase of the Smith stock, but was used for the purpose of furnishing additional cash to the company and was needed therefor because the company's cash had

been seriously depleted on account of the payment of $8,000 made from the company's funds to Murdock.

The master finds that the plaintiff continued in the belief that he was the owner of one half the shares purchased from the Smiths, without any knowledge or reason to believe that Robert Bacon claimed otherwise until about August 17, 1921, when Robert Bacon wrote the following letter to the plaintiff's wife: "Replying to your letter, would say that, knowing the Bacon family as I do, when I purchased control from Mr. Smith I took care to see to it that all the stock was in my name, giving me sole control so that no one could come along and cause me any trouble of any kind. This may explain many things to you . . . . Do you realize that Charles has received $6000 from the business this past year?" It is argued before us, and was contended by the defendant Robert Bacon before the master, that there was not any agreement that he and the plaintiff should own the stock in equal shares or in any other proportion. It is further argued that Robert Bacon was the sole purchaser of the stock and upon its acquisition from the Smiths became the sole owner thereof; that he caused twenty-five shares to be issued in the plaintiff's name, not as a result of any legal obligation but purely as a matter of sentiment.

The findings of fact above set out about which "There is little dispute between the parties" justified, if they did not require, the master's conclusion therefrom that Robert Bacon, in all that he did to procure the Smith stock, was acting in behalf of himself and his brother under an agreement that he was buying the stock in equal shares for himself and his brother. The contentions of Robert that his agreement with the plaintiff was without force because it was made without mutual promises or other consideration, and that the plaintiff incurred no obligation to him because of the loan of $18,000, manifestly are unsound. On the facts found Robert Bacon procured the $18,000 from Cutting as principal and as agent for Charles; and both he and Cutting in the degree of their respective interests could look to the plaintiff for the payment of the loan. In a word, in that limited enterprise the plaintiff and his brother were partners with all

the rights and obligations which appertain to that relation. It is plain their relation, one to the other, was fiduciary; and equally plain that Robert held the stock which he had purchased in pursuance of the agreement with the plaintiff in trust for the complete performance of that agreement.

As respects the allegation in paragraph 24 of the amended bill, that "the defendant, Robert Bacon, has deceived and defrauded the plaintiff with respect to the rents and has applied rents properly due the plaintiff to his own use," the facts as they are found by the master are in substance as follows: From October, 1910, until the end of 1917, rent for the real estate was paid by the Bacon Felt Company at the rate of $100 a month, and the entire amount was received by the defendant Robert Bacon, although the real estate was owned in common by the plaintiff and him. These payments in the beginning were made by checks running to both the plaintiff and Robert which were indorsed by both of them, but later they were made directly to the defendant Robert Bacon. He contended that he received the entire amount of these payments because of an agreement between him and his brother that he should have them by way of additional compensation. The plaintiff "testified that his brother told him that the rent checks were needed to pay interest and taxes." The master finds "that the plaintiff believed that these monthly rental payments were being applied on matters for the joint account of himself and his brother, and that he at no time consented that the rent for the real estate occupied by the defendant corporation should be received by his brother as additional compensation or for any other reason on the account of the defendant, Robert Bacon. The total amount of these payments is $7,540.00, of which the plaintiff is entitled to one half. . . . After 1920 no rent was paid by the corporation as such, but as in the years before that date the corporation continued to pay taxes, insurance and repairs for the property and the charges for repairs since 1920 have been very large."

As respects the collection of rents and accountability therefor, the relation of tenants in common of real estate is fiduciary, and the statute of limitations does not run until

after demand and refusal or a repudiation of the trust with the knowledge of the coowner. *Dewing* v. *Dewing*, 165 Mass. 230. *Robinson* v. *Robinson*, 173 Mass. 233. In the case before us Robert Bacon made no claim for services performed in the collection of the rent and because of the payments of the taxes, insurance and for repairs .made by him. He had no claim or lien for allowances against the sums which were actually paid to and received by him on account of rent of the real estate. There is nothing to take this case out of the usual rule that a defendant is not chargeable with interest in the absence of an agreement that there shall be such, or until there has been a demand for the payment of the sums found to be due. *Ellery* v. *Cunningham*, 1 Met. 112, 116.

As respects the findings of the master and the final decree in relation to the amounts which the defendant Robert Bacon is found to have received illegally from the corporation, the facts found by the master disclose that the plaintiff and Robert Bacon have received large sums of money from the corporation without right or authority therefor; that Robert Bacon has received much more, many thousand dollars more, than has the plaintiff. As has been before observed the bill is brought for the individual benefit of the plaintiff and not as a minority stockholder of the defendant Bacon Felt Company, nor for the benefit of the said company. Notwithstanding the finding of the master "that the financial affairs of the defendant corporation were so under the control of the defendant Robert Bacon that any application for relief by the plaintiff previous to the bringing of this bill in equity would have been an idle ceremony," it is plain the frame of the bill did not warrant the decree that was entered. *Converse* v. *United Shoe Machinery Co.* 209 Mass. 539. *Hayden* v. *Perfection Cooler Co.* 227 Mass. 589. *Bonner* v. *Chapin National Bank*, 251 Mass. 401. *Cutter* v. *Arlington Casket Co.* 255 Mass. 52, 58.

It follows that paragraphs four, five and six of the final decree should be struck out; that paragraph one should be changed to read: That from October, 1910, until 1917, the defendant Robert Bacon received rent from the Bacon Felt

Company for real estate owned jointly by the plaintiff and
said Robert Bacon amounting to $7,540 of which amount
the plaintiff is entitled to one half, namely $3,770, and the
defendant Robert Bacon is ordered to pay the plaintiff the
sum of $3,770 with interest from June 1, 1922, to July 18,
1928, the date of the decree, at the rate of six per cent
per annum, amounting to the total sum of $5,156.73, and
execution in common form is to issue therefor in favor of
the plaintiff against said defendant Robert Bacon; and that,
for the reasons above stated, the interlocutory decree of
July 7, 1928, be modified by the omission of paragraphs 1 and
3 thereof; and that as so modified the said interlocutory and
final decrees be affirmed with costs.

*Ordered accordingly.*