NORMAN D. VAUGHAN *vs.* M. GALE LEMOINE & another.

Suffolk.    March 2, 1953. — April 1, 1953.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Contract*, Construction, Sales agency.    *Interest.*

Under a written contract between the manager of a sales agency of a corporation and one relatively inexperienced in its business whereby the latter associated himself with the manager in conducting and promoting the business of the agency and assumed managerial duties and "the measure of" his and the manager's "salaries and commissions" from the corporation was to be adjusted between them to equal a specified percentage for each and the manager was given a right to terminate the contract at any time within fifteen months, the manager's associate, in view of the circumstances in which the contract was executed and of the conduct of the parties thereunder, was not entitled to share in commissions derived from sales made by the agency prior to such a termination of the contract but not paid to it by the corporation until after the termination.    [85–86]

Under a provision of a contract between the plaintiff and the defendant entitling the defendant to terminate it and "to retain" $1,000 of a $15,000 deposit of the plaintiff "for each month that the contract has run," the defendant, upon terminating the contract at the end of nine months, became obligated to pay $6,000 to the plaintiff immediately at the time of termination and to pay interest thereon from that time.    [86–87]

An associate in a sales agency of a corporation was entitled to interest from the corporation on a sum due him, but retained as a reserve account for him, from the date of a demand evidenced by his bringing suit against the corporation to recover such sum.    [87]

An associate in a sales agency entitled to a share of commissions from its manager could recover interest thereon from the date of receipt by the manager's counsel of a letter from the associate's counsel demanding payment.    [87–88]

BILL IN EQUITY, filed in the Superior Court with a trustee writ dated June 1, 1951.

The suit was heard by *Donnelly, J.*

*Norman von Rosenvinge,* for the plaintiff.

*Samuel F. Hyland,* (*Albert R. Pitcoff* with him,) for the defendants.

WILKINS, J. The plaintiff brought this bill in equity for an accounting and the recovery of sums allegedly due under a written agreement, dated April 14, 1950, with the individual defendant. After a hearing, the evidence at which is reported, the judge made findings, rulings, and an order for a decree. The order was somewhat irregular in that it provided that the individual defendant (hereinafter called the defendant) pay certain sums to the plaintiff and that upon their payment the bill be dismissed. The final decree recited payment of these sums and dismissed the bill without costs. The plaintiff appealed.

At the time of the contract the defendant was the manager and the operating head of the New England sales agency (hereinafter called the agency) of the defendant Homelite Corporation (hereinafter called Homelite). The plaintiff had been formerly employed by Homelite as a salesman and expediter and had worked under the defendant for the agency. By the contract the plaintiff entered into association with the defendant "in conducting and promoting the business" of the agency, and was active in its affairs until the contract was terminated by the defendant on February 1, 1951. During the period down to that date from May 1, 1950, when the plaintiff commenced work, the plaintiff received everything due him except $6,000 from a deposit of $15,000 he made as required by the contract, $500 from an accounting between Homelite and the agency for sales made prior to December 1, 1950, and forty per cent of net commissions paid by Homelite to the agency for December, 1950, and January, 1951. The foregoing are the trial judge's findings. The main controversy before him was whether the plaintiff was entitled to a share in the commissions on sales made by the agency prior to February 1, 1951, but not

paid by Homelite before that date. In deciding this issue
for the defendant the trial judge found that after the plain-
tiff's entrance into the business he received a share in com-
missions due the agency on goods sold prior to the con-
tract but not due or collected by the agency until later.

The material portions of the contract seem to be the fol-
lowing: "1. Lemoine will provide Vaughan with employ-
ment in the Homelite Corporation. 2. Vaughan agrees to
work for the Homelite Corporation, devoting all of his
efforts to the job he is given. 3. The measure of Vaughan's
and Lemoine's salaries and commissions from Homelite
shall be adjusted between the parties to equal 60% for
Lemoine to 40% for Vaughan. . . . 4. As evidence of
Vaughan's good faith and confidence that he will be able
to assume properly the duties of management presently ex-
pected of him, Vaughan will deposit on or before May 1,
1950, the amount of $15,000 with Lemoine. This amount
is to be held by Lemoine until one of the following contin-
gencies occurs: (a) At any time within fifteen months,
Lemoine may terminate the contract and Lemoine will be
entitled to retain $1,000 for each month that the contract
has run. . . ."

1. The issue as to the right to commissions received by
the agency in February, 1951, or later on sales made before
February depends for its determination upon a reading of
the contract in the light of the circumstances in which it was
executed. The phrase "salaries and commissions" is incon-
clusive. Weight could properly be given to the conduct of
the parties as a practical construction of an ambiguous
undertaking. *Atwood* v. *Boston,* 310 Mass. 70, 75. *LaCou-
ture* v. *Renaud,* 325 Mass. 33, 36. The plaintiff, who was
relatively inexperienced in the business, was to enter into
the management of a going concern, which had salesmen.
He was to be paid the agreed percentage from the outset,
although much of his early time with the agency was neces-
sarily to be devoted to learning the business. His percentage
was based on all sales no matter by whom made. There
was this agreed method for termination which the defendant

could, and did, adopt. This undoubted right of the defendant, reserved by him because of uncertainty as to how well the arrangement with the plaintiff would work out, could reasonably be treated as contemplating a termination of the plaintiff's right to receive a percentage of all commissions received after the contract was brought to an end. The trial judge was not required to accept any implications in the plaintiff's testimony that he did not appreciate that after he began work under the contract he received some part of commissions paid for sales made before May 1, 1950. In any event, on this record, we are in no position to differ with the trial judge in his findings or in his interpretation of the contract. This is enough to dispose of the issue. Elaboration of the various aspects of the contract and of its performance would not add to our jurisprudence. There is no need for a further accounting or declaration of rights.

2. The plaintiff's bill prayed for interest on the various sums due him.

(a) First is the deposit balance of $6,000. The pertinent language of the contract is that at "any time within fifteen months" the defendant may terminate and "will be entitled to retain $1,000 for each month that the contract has run." In the absence of a provision for the payment of interest, none can be allowed except as "damages for a breach of the contract, or in other words for the wrongful withholding of the sum unpaid." *Burr* v. *Commonwealth*, 212 Mass. 534, 537. As was said in *Dodge* v. *Perkins*, 9 Pick. 368, 386, "The great inquiry is, whether the party has done all that the law required of him in the particular case . . . . If he has, he is not accountable for interest; if he has not, he is accountable for it as a compensation for the non-performance of his contract." Here the defendant had the exclusive decision, at the time when he acted, whether the contract should continue or end. We think that upon his decision to end the contract whereby he became "entitled to retain" $9,000 of the deposit he was under an immediate duty to pay to the plaintiff the balance which the defendant was not "entitled to retain" and to which by the same token the

plaintiff necessarily became entitled. This conclusion is un-affected by any dispute as to other sums. The defendant should pay the plaintiff interest on $6,000 from February 2, 1951, to the date of payment, which was after the order for decree (March 19, 1952) and before the final decree (April 4, 1952).

(b) Next comes the $500 from the accounting between Homelite and the agency for sales made prior to December 1, 1950. There are no findings as to the origin of this sum. From the meager evidence we find that Homelite, in accordance with its usual practice, withheld this sum as a reserve account for the plaintiff from the amount due him for May, 1950, the first month he worked. According to the final decree, it was paid to the plaintiff by the defendant after the order for decree. There is no basis for finding a contractual provision similar to that respecting the deposit. So no interest can be charged until there was a demand for payment. *Ellery* v. *Cunningham*, 1 Met. 112, 116. *Bacon* v. *Bacon*, 266 Mass. 462, 474. Up to June 1, 1951, there was no demand for the payment of this sum. But the bringing of this suit on that date constituted a demand. *Gay* v. *Rooke*, 151 Mass. 115, 117. *Buckley & Scott Utilities, Inc.* v. *Petroleum Heat & Power Co.* 313 Mass. 498, 509. The plaintiff should have interest on $500 from June 1, 1951, to the date of payment.

This money was retained by Homelite, and interest thereon should be charged against Homelite. It is of no importance when, if at all, Homelite may have turned over this sum to the agency. See Restatement: Agency, § 183, comment a.

(c) The last question of interest relates to the forty per cent of net commissions for December, 1950, and January, 1951, paid by Homelite to the agency upon a date or dates not disclosed by the findings or by the evidence. The total of these amounts in the sum of $5,622.68 was paid to the plaintiff by the defendant after the order for decree and before the final decree. The dates when the computations of these monthly amounts were first given by Homelite to

the agency cannot be found on the evidence. These commissions are subject to the same rule as the $500 deposit. There is this factual difference, however. Payment of these commissions was demanded in a letter sent by the plaintiff's counsel to the defendant's counsel on March 30, 1951. The plaintiff is entitled to interest on $5,622.68 from the defendant from the date of receipt of that letter, which we find to be March 31, 1951, until the date of payment.

3. The final decree is reversed. A new final decree is to be entered ordering the defendant Lemoine to pay the plaintiff interest on $6,000 from February 2, 1951, to the date of payment, and on $5,622.68 from March 31, 1951, to the date of payment; and ordering the defendant Homelite Corporation to pay the plaintiff interest on $500 from June 1, 1951, to the date of payment. The plaintiff is to have costs of appeal.

*So ordered.*