# SUPREME JUDICIAL COURT,

FOR THE

COUNTY OF HAMPDEN, SEPTEMBER TERM 1868,
AT SPRINGFIELD.

▬▬▬

PRESENT:

Hon. REUBEN A. CHAPMAN, Chief Justice.
Hon. EBENEZER R. HOAR,
Hon. HORACE GRAY, Jr.,
Hon. DWIGHT FOSTER,     } Justices.
Hon. JOHN WELLS,

---

## RICHARD DELANEY vs. CORYDON ROOT.

By an oral contract between A. and B. for the cultivation of B.'s land, each was to furnish one half of the seed and manure, B. to do the team work, and A. the hand work and harvesting of the crop, which they were to divide equally. Each furnished his share of material, and did his share of the work, until after the crop began to grow, when B. refused to do more work, and forbade A. to go again upon the land. A. nevertheless entered the land again at harvest time, and cut the crop, when B. seized and consumed the whole of it against A.'s will, no division of it having been made, nor any demanded by either of them. *Held,* that they were tenants in common of the crop, and B. was liable in tort for his conversion of A.'s share of it.

TORT in the nature of trover for the conversion of an undivided half of a crop of corn. Trial in the superior court, before *Lord,* J., who allowed the following bill of exceptions:

"The plaintiff, in opening his case, stated that he expected to prove the following facts: That in the spring of 1866 he entered into a contract orally with the defendant, to farm a lot of land

belonging to the defendant, upon shares; that it was agreed that each should furnish one half of the seed and manure, that the plaintiff should do the hand labor and the defendant the team work, that the plaintiff should harvest the crops, and that they should be divided equally between them; that the plaintiff went upon the land, and (after the defendant had ploughed the same) planted the same to corn, furnishing his half of the seed and manure; that thereafter, when the crop needed hoeing, he called on the defendant to furnish a team, to wit, a horse and a cultivator, to cultivate the same, which he refused, and then the plaintiff hoed the same as well as he could without its being cultivated; that thereafter, at the proper time, he undertook to hoe the crop a second time, and was forbidden to go upon the land by the defendant, and thereupon desisted; that at harvest time the plaintiff went upon the land, against the defendant's wishes and without his leave, and cut the corn and put it in stacks, and, in the night time after the day of so doing, the defendant carried the same away without the plaintiff's knowledge or consent, (neither party having made or demanded a division of the same,) and took the whole crop and fed it out to the cattle of the defendant, against the plaintiff's will. The plaintiff stated he did not expect to prove that the plaintiff demanded any division of the crop previous to the carrying of the same away, as above stated by the defendant. Upon this statement the court ruled that the plaintiff could not maintain his action, and ordered a verdict for the defendant; and the plaintiff excepts."

*G. M. Stearns*, for the plaintiff.

*C. A. Winchester*, for the defendant.

Hoar, J. It is settled in this Commonwealth that one tenant in common of a chattel may maintain an action of trover, or tort in the nature of trover, against his cotenant, who has converted the chattel to his own use; and that such a conversion may be proved by the destruction of the chattel; by its sale; or by such an act of appropriation as will, by its nature, finally preclude the other party from any future enjoyment of it 2 Greenl. Ev. § 646, note 4. *Daniels* v. *Daniels*, 7 Mass. 135

*Weld* v. *Oliver*, 21 Pick. 559. *Burbank* v. *Crooker*, 7 Gray, 158. If the plaintiff, therefore, was tenant in common with the de‑ fendant of the corn which the defendant took and consumed, the action may be maintained.

The defendant contends that, by the contract on which the plaintiff relies, no title or interest in the land was created, but merely a revocable license to enter for the purpose of planting and cultivating the crop; and that this license was revoked. And the authorities are abundant to sustain the doctrine that a mere license to enter upon land is revocable, so far as it remains executory. *Drake* v. *Wells*, 11 Allen, 141, and cases there cited. A contract for the sale of growing trees, or growing annual crops, to be severed from the land by the purchaser, does not convey any interest in the land; and, so far as it implies a license to enter upon the land, the license may be revoked before it is executed. *Parsons* v. *Smith*, 5 Allen, 578. *Giles* v. *Si‑ monds*, 15 Gray, 441.

But the application of this doctrine to the case of a contract for cultivating land on shares is attended with some difficulties; and it is not easy to define with precision the nature of the title or interest created by the contract, either as between the con‑ tracting parties themselves, or in regard to third persons. There may be an interest in land of a qualified nature, where the land itself is not conveyed. Thus if one grant to another *vesturam* or *herbagium terræ*, the land does not pass; but the grantee may have an action of trespass *quare clausum* for a disturbance of his right. Co. Lit. 4 *b.* And, where one had the exclusive right of cutting turf in a several parcel of land, it was held that he might maintain trespass against one who dug and carried away turf from that place. *Wilson* v. *Mackreth*, 3 Burr. 1824. In *Clap* v. *Draper*, 4 Mass. 266, it was held that under a grant of all the trees and timber standing and growing on a close, with liberty at all times to cut and carry away the trees, the grantee might maintain trespass *quare clausum fregit* against the owner of the soil for cutting down the trees. In these cases the right in the land, though limited, was exclusive.

When land was farmed on shares, it was held in *Hare* v

*Celey*, Cro. Eliz. 143, that the owner of the soil only could bring trespass for breaking the close; but that the tenants on shares might join with him in an action of trespass for spoiling the corn, because they were tenants in common of the crop. And like decisions have been made in several cases in New York. *Foote* v. *Colvin*, 3 Johns. 216. *Bradish* v. *Schenck*, 8 Johns. 151. *Stewart* v. *Doughty*, 9 Johns. 108. *De Mott* v. *Hagerman*, 8 Cowen, 220. *Caswell* v. *Districh*, 15 Wend. 379. Contracts of this nature may either be regarded as a lease of the land, with a rent payable in a portion of the crop; or as an agreement by one man to work upon the land of another, and to receive a part of the crop as compensation for his labor; or as giving the laborer a qualified interest in the land, not exclusive, and not such as makes him a tenant, but creating a tenancy in common of the growing crops with the owner of the soil, and giving him a right of ingress and regress for the purpose of cultivating them and taking away his share. When the terms of the contract will admit of the latter construction, it is preferred, as giving greater security to the rights of both parties.

The two cases in which the subject has been considered in this Commonwealth are *Chandler* v. *Thurston*, 10 Pick. 205, and *Walker* v. *Fitts*, 24 Pick. 191. In *Chandler* v. *Thurston*, the contract was by parol, and was to take the land to cultivate, find half the seed, and when the crop was harvested to have half as a compensation for the labor. Bragg, who had contracted to cultivate the farm on these terms, had absconded before completing his agreement; and it was held that he had no right in the crop when harvested, because, if his contract were only regarded as a contract to labor on the land, and receive his pay in produce, he had not performed it; and if it was regarded as a hiring of the land, rendering a rent in produce, he was only a tenant at will, and, having terminated the estate at will by his own act, was not entitled to emblements. In *Walker* v. *Fitts*, the contract was very much like that in the case at bar, but by an agreement under seal; and it is said by Mr. Justice Morton, that, " whatever may be the nature and extent of the interest of the occupant, in the land, and whether he has any possession

for the interruption of which he can have any legal remedy or not, it is in our opinion well settled that of the growing crops he is tenant in common with the owner."

And we are all of opinion that in this case the facts which the plaintiff offered to prove were sufficient to maintain the action, and that the exceptions must be sustained. It makes no difference that the contract was by parol, because he had been put into such possession of the land as his qualified interest required. Although by our statute this interest, being created by parol, could not exceed a tenancy at will, yet, when the owner of the land undertook to terminate it, the right to emblements remained. The parties were tenants in common of the crop, and the defendant was responsible in tort for the conversion of the plaintiff's share. *Exceptions sustained.*