WILLIAM H. GOERGEN, Respondent, *v.* HELEN MAAR, Appellant, and CHARLES T. MILLER et al., Respondents.

Third Department, July 11, 1956.

*Charles J. Duncan* for appellant.

*Kenneth T. McKay* for William H. Goergen, respondent.

*Arthur B. Lanphier* for Charles T. Miller and another, respondents.

HALPERN, J. In this action for partition, it appeared that the defendant-appellant and the plaintiff-respondent, together with the defendants-respondents, owned certain real property in the city of Albany, New York, as tenants in common. They all traced their title, by devise or inheritance, to a common source. The plaintiff-respondent was the owner of a four sixteenths interest; the defendant-appellant was the owner of a six sixteenths interest and the other two defendants were the owners of three sixteenths each. The defendant-appellant had been in sole possession of the property and had collected the rents from January 1, 1943, to the date of the commencement of the action, July 16, 1954. The other cotenants sought to hold the appellant liable for the rents collected by her less the amounts disbursed for taxes, water rents and repairs. The appellant set up the bar of the six-year Statute of Limitations. This objection was overruled by the Referee and by the Special Term and it presents the sole question raised upon this appeal.

The interlocutory judgment adjudges that the appellant be charged with the net balance of rents collected by her in the amount of $8,408.51 and directs that the Referee retain that amount out of her share of the proceeds of the sale and the judgment also directs that a personal judgment be rendered against the appellant for any deficiency, if her share of the proceeds of the sale should be insufficient to pay the amount owing by her. Presumably an adjustment is to be made, in carrying out the judgment, so that the appellant will be credited with the net share of the rents to which she is entitled as cotenant.

Insofar as the judgment directed that an adjustment for the rents collected by the appellant be made upon the distribution of the proceeds of the sale, the Special Term was clearly correct in holding that the Statute of Limitations did not apply. Section 1075 of the Civil Practice Act provides that in an action for partition, the court " may adjust the rights of one or more of the parties as against any other party or parties, by reason

of the receipt by the latter of more than his or their proper proportion of the rents or profits of a share or part of a share ''. This section was derived from section 1589 of the Code of Civil Procedure (L. 1880, ch. 178), without change of substance. The section was inserted in the code, according to Throop's notes (Code Civ. Pro. [Throop ed., 1880, pt. 2], § 1589), '' to avoid the possibility of affecting, by any of the previous provisions, the ruling in *Scott* v. *Guernsey,* 48 N. Y. 106 ''. *Scott* v. *Guernsey,* which had been decided in 1871, had held that the court could make an equitable adjustment for rents collected by one cotenant, in a partition action, and that it was not necessary to bring a separate action for an accounting and, furthermore, that '' The rents, on a partition, are a lien upon the shares or interest of any co-tenants from whom they may be due '' (p. 124). While the court in *Scott* v. *Guernsey, supra,* mentioned only an adjustment of rents, the underlying principle was of course applicable to expenditures made by a cotenant as well as to rents or profits collected by him. The code section referred only to an adjustment of rents or profits, presumably because the draftman of the section had the *Scott* case specifically in mind.

In a partition action, the court may adjust all the equities of the parties in determining the distribution of the proceeds of the sale. In the process of adjustment, the court is not concerned with the enforcement of any personal liability. Hence, there is no basis for applying any separate Statute of Limitations to the adjustment process. So long as the partition action itself is not barred by the running of the Statute of Limitations (Civ. Prac. Act, § 41-a), there is no period of limitation beyond which the court is forbidden to go in making an equitable adjustment of the shares of the parties. The court may take into account the moneys received and the moneys expended by any of the cotenants throughout the whole period of the co-ownership of the property. As was said many years ago, '' There does not seem to be any provision limiting the time for which rents may be apportioned in actions for partition '' (*Adams* v. *Bristol,* 126 App. Div. 660, 664, affd. 196 N. Y. 510).

The legal theory seems to be that any item of rent received by a cotenant, in excess of his share of the income of the property, is an equitable charge against his interest and any expenditure made by a cotenant, in excess of his share of the obligation, is a charge against the interests of his cotenants; the respective interests of the parties in the property are deemed to be reduced or increased accordingly. Each tenant

in common " holds a contingent interest in the entire title until all equities relating to the tenancy are adjusted ". The " respective interests " of the cotenants are to be " equalized in a partition proceeding " and " the Statute of Limitations would not be a defense " to the adjustment of the equities (*Matter of Wood*, 68 Misc. 267, 269).

Insofar as the judgment appealed from provides that a personal judgment should be rendered against the appellant for any deficiency, a different question arises. In this respect, the judgment goes beyond an adjustment of the shares of the parties in the proceeds of the partition sale and undertakes to enforce a personal liability against the appellant. This liability is based upon section 532 of the Real Property Law under which a cotenant " who has received more than his own just proportion " may be held liable for the excess in an action at law brought by his cotenants. This statute goes back to the time of Queen Anne (4 & 5 Anne, ch. 16, § 27 [1705]). The statute of Anne was re-enacted in New York State by chapter 4 of the Laws of 1788 (1 Van Ness & Woodworth [1813 rev.] 90, § 2), which was codified as section 9 of title 5 of chapter 1 of part 2 of the Revised Statutes (1 Rev. Stat. of N. Y. [1st ed., 1829], part II, ch. I, tit. V, § 9, p. 750). (*Minion* v. *Warner*, 185 App. Div. 246.) Without change of substance, this statute subsequently became section 1666 of the Code of Civil Procedure, from which it was transferred to the Real Property Law.

The relationship of tenants in common " who hold their estate through descent or under a will " is " a quasi trust relationship " (*Minion* v. *Warner*, 238 N. Y. 413, 417). In such a case, the liability of the cotenant receiving more than his just share of the rents may also be enforced by a suit in equity for an accounting. The Statute of Limitations is applicable to an action by one cotenant against another, seeking a personal judgment, whether it is a common-law action on an account, under section 532 of the Real Property Law, or an action in equity for an accounting. The equity action would ordinarily be governed by a ten-year Statute of Limitations (Civ. Prac. Act, § 53), and the action at law by a six-year Statute of Limitations (Civ. Prac. Act, § 48). But, since this is a case of " concurrent jurisdiction in law and equity, equity is bound by the Statute of Limitations ", which is applicable to the law action (*Minion* v. *Warner, supra,* 418). The six-year Statute of Limitations is therefore applicable to the enforcement of the personal liability of the cotenant.

However, the question remains as to when the Statute of Limitations begins to run against an action on an account or

for an accounting. If there were an express agreement requiring the cotenant in possession to distribute the rents as soon as they were received or to render annual accountings, the Statute of Limitations would begin to run at the time of the receipt of the rents or at the end of the year in which the rents were received. But, in the absence of such an agreement, the Statute of Limitations does not ordinarily begin to run until the termination of the relationship of the cotenants by a sale of the property. This conclusion may be reached by either of two approaches. First, it may be held that the relationship between the cotenants is a fiduciary one, at least in a case in which the co-ownership originated in a devise by, or in inheritance from, a common source (*Minion* v. *Warner, supra*). A principle may then be applied analogous to that governing the running of the Statute of Limitations in an action against a trustee (*Lammer* v. *Stoddard*, 103 N. Y. 672; *Spallholz* v. *Sheldon*, 216 N. Y. 205). Under that theory, the Statute of Limitations would not begin to run until the termination of the relationship, unless the cotenant in possession had theretofore openly repudiated his obligation to account, in which case the Statute of Limitations would begin to run at the time of the repudiation (*Robinson* v. *Robinson*, 173 Mass. 233; *Bacon* v. *Bacon*, 266 Mass. 462). The *Robinson* case was cited with approval by the Court of Appeals in *Minion* v. *Warner* (*supra*, p. 418), but the court chose to rest its conclusion that the Statute of Limitations had not begun to run until the termination of the relationship, in that case, upon a somewhat different ground. The court held that where "one tenant in common received rents and profits and paid not merely for repairs and the ordinary running expenses of the property but for taxes in respect to which he had a personal claim against his cotenants", there existed between the parties "mutual, open and current accounts" (*Minion* v. *Warner, supra*, p. 418). Accordingly, the court held, the Statute of Limitations did not begin to run "until the last item in 1916 when the property was * * * sold" (p. 418). (See Civ. Prac. Act, § 56.)

The same reasoning is applicable here. The appellant collected the rents of the property and became personally liable therefor, on the one hand, and, on the other, she paid the taxes for which all the cotenants (all of whom resided in the tax district) were personally liable (Tax Law, § 71). There was therefore a "mutual, open and current account" between the parties and the Statute of Limitations did not begin to run until the receipt of the last item of rent or the making of the last disbursement of taxes therefrom. The defendant-appellant was

therefore properly required to account for all the rents collected by her from the time of her taking possession and the judgment properly provided for personal liability for any deficiency.

The judgment appealed from should be affirmed, with costs.

FOSTER, P. J., BERGAN, ZELLER and GIBSON, JJ., concur.

Judgment affirmed, with costs.