MARY R. ARSENAULT *vs.* WILFRED J. ARSENAULT
(and a companion case between the same parties).

Bristol.    October 28, 1957. — March 10, 1958.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN,
& WHITTEMORE, JJ.

*Husband and Wife,* Property. *Gift. Equity Jurisdiction,* Husband and
wife. *Tenants in Common. Personal Property,* Tenancy in common.
*Attorney at Law. Equity Pleading and Practice,* Appeal; Master:
rulings of law. *Interest.*

The correctness of an interlocutory decree, not appealed from, confirm-
ing a master's report in a suit in equity was open for consideration on
an appeal from the final decree. [193]
An exception to a master's report based on his ordering the hearing to
proceed despite an oral objection of the defendant to the plaintiff's
attorney acting for the plaintiff on the ground that the attorney had
represented the defendant in a previous proceeding between the same
parties involving the same property must be overruled: the defendant
should have raised the point in the manner prescribed by Rule 20 of
the Superior Court (1954). [193–194]

Any ruling of law contained in a master's ultimate conclusion was merely advisory and did not harm a party excepting to the conclusion. [194]

A conclusion was justified that a husband, who had purchased bonds and established savings bank accounts in the joint names of himself and his wife with money earned by him, transferred to his wife a one-half interest as tenant in common in the bonds and the bank accounts when, after she had left him, taking with her the bonds and the bank books, and he had brought a suit against her to obtain possession of them and she had brought a divorce proceeding against him, he asked her to live with him again and promised her that the bonds and the bank accounts would "belong to both equally" and she, in reliance thereon, participated in discontinuing the litigation between them, resumed married life with him, and returned the bonds and the bank books to their home where both parties had access to them. [194]

Acts of a husband of disposing of bonds and withdrawing savings bank deposits owned by him and his wife equally as tenants in common and of appropriating the proceeds to his own use entitled her to maintain a suit in equity against him and to a decree therein ordering him to pay her one half the amount of the bank deposits and the value of the bonds with interest from the time of such acts by him. [194–195]

Two BILLS IN EQUITY, filed in the Superior Court on January 27, 1956, and February 7, 1956, respectively.

The suits were heard by *Smith*, J., on a master's reports.

*Clair F. Carpenter*, for the defendant.

*George B. Goodman & Joel Goodman*, for the plaintiff, submitted a brief.

WILLIAMS, J. These are two suits in equity brought by the plaintiff for an accounting by her husband of rentals received from real estate owned by them as tenants in common and of the proceeds of certain savings bank deposits and government bonds held in their joint names. In the suit concerning the rentals two occupants of the real estate were joined as defendants but it does not appear that after service there were further proceedings in reference to them. The facts have been found by a master whose reports which are the same in each case have been confirmed. We shall refer to them as if in the form of a single report.

The parties have been married thirty-two years, have three children, and have lived most of their married life on the island of Martha's Vineyard. They own two small parcels of real estate as tenants in common in Tisbury, from the rentals of which the defendant has collected $320. Of

this amount he has paid to the town for taxes and water $280 and now has in his possession a balance of $40.

The bonds and savings bank accounts, which are the subject of one of these suits, were respectively purchased and opened by the defendant with money earned by him and stand in the joint names of himself and wife. In or about April, 1953, the plaintiff left the defendant because of his physical abuse and took with her a tin box containing the bonds and two savings bank books, one in New Bedford Institution for Savings and one in First Safe Deposit National Bank of New Bedford. The defendant brought a bill in equity to obtain possession of these bonds and bank books on which he obtained a restraining order enjoining his wife from disposing of them. In July of that year the defendant visited her and asked her to drop a divorce case which she had begun and to return to live with him. He promised that he would never abuse her again and told her that the money and bonds would "belong to both equally and that they would always be that way." Because she believed what he said, the plaintiff returned to live with him on August 18. On that day the parties with their attorneys went to the court house, "discontinued their litigation against each other and obtained the bank books and the bonds at the Court House from the wife's then attorney, [and] then returned to their home where the tin box [containing the bonds and bank books] was kept under a couch." On November 19, 1953, the defendant "unbeknown" to the plaintiff went to New Bedford and withdrew all the money from both accounts. He redeposited $940.48 in New Bedford Institution for Savings in his name as trustee for his wife. She learned of this a day or two later. They continued to live together until September, 1955, when after continued abuse by the defendant they finally separated. The present proceedings were instituted early in 1956.

In conclusion the master found that "on August 18, 1953, the plaintiff acquired equal ownership with her husband in the two bank books . . . together with the bonds which

were in the tin box by reason of his promise made to her to this effect, if she returned to him." He found that on August 18, 1953, the deposits represented by the bank books amounted to $5,440.28 in First Safe Deposit National Bank and $2,245.66 in New Bedford Institution for Savings. He found the value of the bonds to be $1,800, that being the value admitted by the defendant, and no different value being established.

The master reported that at the outset of the hearing before him the attorney for the defendant "objected to proceeding with the trial on the ground that Mr. Goodman, attorney for the plaintiff, had formerly represented the defendant in a bill in equity against his wife brought in Bristol County by the present defendant in which he claimed sole ownership of the same bank deposits and bonds. This is the same bill referred to in my report. He contended that Mr. Goodman should disqualify himself to act as the attorney for the present plaintiff because of information he had obtained from the present defendant when he represented him and that his position violated the canon of ethics of the American Bar Association. Mr. Goodman assured him he had no such information and furthermore that the present bills were not in any way predicated on any such information. Mr. Goodman suggested that counsel appear before a judge of the Superior Court to determine this question, which he did but which Mr. Carpenter did not do. I then ordered the trial to proceed without further action over objection and exception taken by Mr. Carpenter. At no time during the trial did it appear that any questions addressed to the defendant . . . by Mr. Goodman sought to elicit any such information complained of." The defendant filed exceptions to the master's report (1) on the ground above stated, and (2) on the ground that the finding that on August 18, 1953, the plaintiff acquired equal ownership with her husband in the bank books and bonds contained a ruling of law which the master was not authorized to make. The report as above stated was confirmed and, impliedly, the exceptions were overruled.

A final decree was entered in the suit relating to the rentals from the real estate ordering the defendant to pay the plaintiff $20 with costs of $25. In the suit concerning the bonds and bank accounts a final decree was entered ordering that the defendant pay to the plaintiff $4,742.97 with interest from November 19, 1953, amounting to $1,019.74, a total of $5,762.71, with costs in the sum of $30. From each of these decrees the defendant appealed.

Although no appeals were taken from the interlocutory decrees confirming the master's reports their correctness is open for consideration upon the appeals from the final decrees. G. L. (Ter. Ed.) c. 214, § 27. *Gibbons* v. *Gibbons*, 296 Mass. 89. There was no error in dealing with the two exceptions which were impliedly overruled by the decrees confirming the reports.

As to the first exception relating to the plaintiff's attorney it is provided by Rule 20 of the Superior Court (1954) that "The right of an attorney to appear for any party shall not be questioned by the opposite party, unless the objection be taken in writing within ten days after the entry of the case or of the appearance of such attorney, but the court may permit the objection to be taken later."

This provision is similar to that of Common Law Rule 3 of the Superior Court (1906) which read, "The right of an attorney of this court to appear for any party shall not be questioned by the opposite party, unless the objection be taken in writing within ten days after his appearance." In *Norwood* v. *Dodge*, 215 Mass. 351, where the parties were in court ready to try issues of fact to a jury, the defendant objected orally to the counsel for the plaintiff acting for her on the ground that he had previously been of counsel for the estate of the defendant's intestate in the same matter, and later filed a written motion to the same effect. An exception to the refusal of the judge to direct the plaintiff's counsel not to proceed was overruled by this court, the opinion stating that the rule was within the authority of the Superior Court and had the force of law. That case is

decisive of the point here raised. The objection of the defendant presented a collateral issue having no connection with those to be tried by the master and should have been brought to the attention of the court in the manner prescribed by the rule.

The defendant was not harmed by the master's ruling of law which was in substance a finding of fact involving a ruling of law. *Goldston* v. *Randolph,* 293 Mass. 253, 256. It is to be considered as merely advisory and may be disregarded except in so far as adopted by the judge. See *Cook* v. *Scheffreen,* 215 Mass. 444, 449; *Bradley* v. *Borden,* 223 Mass. 575, 586–587; *Aurea Aspasia Corp.* v. *Crosby,* 331 Mass. 515, 518.

The principal amount, which by the final decree the defendant is ordered to pay, is one half of the amount of the deposits in the two savings accounts and of the value of the bonds as of August 18, 1953, with interest from the following November 19. It appears therefore that the judge must have ruled, as did the master, that the plaintiff on August 18 acquired equal ownership with her husband in the deposits and the bonds. We think that the findings were sufficient to justify this ruling. The defendant evidenced his intent to give his wife a one-half interest in the deposits and bonds if she returned to live with him by saying that they would "belong to both equally." Induced by his promise the plaintiff procured the return of the bank books and bonds. The parties resumed their married life and the bank books and bonds were kept in a convenient place to which each had equal access. As the bank books and bonds already stood in their joint names nothing further was required to vest title to a half interest in the wife. *Malone* v. *Walsh,* 315 Mass. 484, 490. See *Kittredge* v. *Manning,* 317 Mass. 689, 694. By the withdrawal of the deposits and the disposal of the bonds on November 19, the defendant substantially deprived his wife of her interest in them. So far as she was concerned they had ceased to exist.

The plaintiff's interest in the deposits and bonds was, we think, that of a tenant in common. As such she could main-

tain a suit in equity against her husband who had converted the property held in common to his own use and by his appropriation of it had finally precluded her from any future enjoyment of it. See *Delaney* v. *Root,* 99 Mass. 546, 547; *Johnson* v. *Nourse,* 258 Mass. 417, 419; *Cram* v. *Cram,* 262 Mass. 509. Compare *Matek* v. *Matek,* 318 Mass. 677.

No credit was given to the defendant in the decree for the deposit of $940.48 made by him as trustee for his wife. We assume that the evidence was not sufficient to prove a valid trust enforceable by the plaintiff. At least there were no findings that the purported cestui was notified of the trust's creation or that she accepted it. See *Day Trust Co.* v. *Malden Savings Bank,* 328 Mass. 576, 578–579. There was no error in the award of interest. See *Potier* v. *A. W. Perry, Inc.* 286 Mass. 602, 606; *Novick* v. *Novick,* 299 Mass. 15; *Manhattan Clothing Co. Inc.* v. *Goldberg,* 322 Mass. 472, 475–476.

In each case the interlocutory decree is affirmed and the final decree is affirmed with costs of the appeal to the plaintiff. *So ordered.*