CYR, Senior Circuit Judge,
dissenting.
The majority opinion holds that since the Cambridge state-law accounting claim might require it to establish as a threshold matter that . its predecessor-in-interest, Margarete Seemann, was an original co-owner of the copyright in Das Hummel-buch, the Cambridge claim thus “arises under” the Copyright Act for purposes of both subject matter jurisdiction and, by logical extension, the Act’s three-year statute of limitations. Inasmuch as the ramifications of this holding — viz., that the federal courts have exclusive subject matter jurisdiction to adjudicate all accounting claims between the co-owners of a copyrighted work, see 28 U.S.C. § 1338(a)-are both unprecedented and potentially pernicious, I respectfully dissent.
I
The majority relies principally on decisions such as De Sylva v. Ballentine, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956), for the proposition that any state-law cause of action which potentially involves a threshold determination of the plaintiffs copyright ownership must be said to “arise under” the Copyright Act (viz., a de facto federal cause of action), and thus is governed by the Act and subject to its three-year statute of limitations, thereby rendering any discrete inquiry into the scope of the Act’s preemptive effect immaterial. However, De Sylva was a non-diversity case in which the plaintiff expressly filed a claim pursuant to the Copyright Act, demanding a declaratory judgment that she was a co-owner of a copyrighted work, and consequently the Court assumed that the Copyright Act’s substantive definitions concerning copyright ownership governed any decision on the merits of the plaintiffs federal-law claim. See id. at 975.[14] To establish subject matter jurisdiction, a declaratory judgment plaintiff normally must demonstrate more than its desire to settle its rights under federal law, but must show “a real and reasonable apprehension” that the defendant plans to sue to establish that the plaintiff is not so entitled, viz., that Goebel planned to litigate a dispute as to whether the Cambridge chain of title originated with a person who was a “co-owner” of the copyright as defined by the Copyright Act of 1909. See generally, 3-12 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 12.01 (2005) (noting that “the [federal] Declaratory Judgment Act [28 U.S.C. § 2201(a)] does not, of its own force, confer subject matter jurisdiction on the federal courts”; “[o]nce an action for declaratory relief is instituted, the defendant can attempt to negate the element of reasonable apprehension of litigation by entering a binding covenant not to sue.”). When the plaintiff himself pleads a claim for declaratory judgment, the ownership of the Copyright Act title is not merely a potential focus of dispute, it is the only issue relevant to an adjudication of the declaratory action.[15]
*93 In stark contrast, Cambridge filed no federal-law claim for a declaration of copyright ownership under the Copyright Act, but merely a claim in equity for an accounting between tenants in common of property, which is premised entirely on state-created common law. See, e.g., Arse-nault v. Arsenault, 337 Mass. 189, 148 N.E.2d 662, 663 (1958); see also Nimmer on Copyright § 6.12 (noting that a joint owner of a copyrighted work is under an equitable duty to account to other joint owners for a rateable share of the profits realized from his use of the work). For jurisdictional purposes, the plaintiff normally is the “master” of his complaint, and if he pleads a claim purely based in state law, the claim cannot be deemed to have “arise[n] under” federal law, even if it is anticipated that the defendant’s answer will deny the plaintiffs factual allegations or will raise federal-law defenses to that state-law claim. See Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc., 535 U.S. 826, 831, 122 S.Ct. 1889, 153 L.Ed.2d 13 (2002) (“[S]ince the plaintiff is ‘the master of the complaint,’ the well-pleaded-eomplaint rule enables him, ‘by eschewing claims based on federal law, ... to have the cause heard in state court.’ ”) (citation omitted); Caterpillar, Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (noting that plaintiff properly “may avoid federal jurisdiction by exclusive reliance on state law”); Ten Taxpayer Citizens Group v. Cape Wind Assocs., LLC, 373 F.3d 183, 191 (1st Cir.2004) (noting that the well-pleaded complaint rule applies “even where the asserted defense is the preemptive effect of a federal statute”). On its face, the Cambridge complaint neither invokes nor calls for the interpretation of any federal law. See Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg., 295 F.3d 59, 63 (1st Cir.2002) (observing, in dictum, that “[it] is unlikely that any federal cause of action is asserted, even though federal law is the source of the Hummel Book itself’); see also Goodman v. Lee, 78 F.3d 1007, 1012 (5th Cir.1996) (noting that an accounting claim between joint owners of copyright “is governed in all respects by state law”); Iza Music Corp. v. W & K Music Corp., 995 F.Supp. 417, 418 (S.D.N.Y.1998) (finding that a state-law accounting claim, in which plaintiff did not seek a declaration of joint ownership under the Copyright Act, did not “arise under” the Act, distinguishing cases like Merchant v. Levy, 92 F.3d 51, 55 (2d Cir.1996), because they “focus[ed] solely on the claim for a declaration of joint ownership”); accord Keith v. Scruggs, 507 F.Supp. 968, 970 (S.D.N.Y.1981) (finding no federal jurisdiction where denial of the plaintiffs ownership rights under the Copyright Act was merely a potential defense to complaint). Accordingly, De Syl-va is legally and factually inapposite.
11
In cases where the complaint articulates a claim exclusively in terms of state law, there are only two narrow exceptions to the well-pleaded complaint rule. Such a claim might be considered to “arise under” federal law for jurisdictional purposes if: (i) an adjudication of the state-law claim necessarily will involve the determination of a “substantial federal question,” see Almond v. Capital Props., Inc., 212 F.3d 20, 23 (1st Cir.2000); or (ii) a federal statute *94 (e.g., the Copyright Act) can be said to exert such a pervasive and overpowering preemptive force that all state-law claims of the type pleaded are. “completely preempted,” see Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 22, 24, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (noting that plaintiff cannot, by “artful pleading,” escape complete preemption); SPGGC, LLC v. Ayotte, 488 F.3d 525, 530 n. 4 (1st Cir.2007) (noting that complete preemption “converts the state claim into a federal claim”). In my view, the Cambridge accounting claim satisfies neither exception.
A. “Substantial Federal Question ” (“SFQ ”) Jurisdiction
Goebel suggests that, even though the Cambridge accounting claim makes no mention of the Copyright Act, it “arises under” the Act in that Cambridge obviously would not be entitled to a state-law accounting if it were not a co-owner of the Das Hummelbuch copyright, a status which in turn depends, inter alia, on Cambridge establishing that Margarete Seemann originally fit the co-ownership definitions of the Act. See 17 U.S.C. § 101 (noting that “joint work” is “a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole”); id. § 201(a) (“The authors of a joint work are co-owners of copyright in the work.”).[16]
Admittedly, “[djetermining precisely which [state-law] actions ‘arise under’ copyright law, and therefore fall within exclusive federal jurisdiction, ‘poses among the knottiest procedural problems in copyright jurisprudence.’ ” Gener-Villar v. Ad-com Group, Inc., 417 F.3d 201, 203 (1st Cir.2005) (quoting Nimmer on Copyright § 12.01[A]). Nonetheless, since the “federal courts are courts of limited jurisdiction, ... [they] must ‘monitor their jurisdictional boundaries vigilantly.’ ” Diaz-Rodriguez v. Pep Boys Corp., 410 F.3d 56, *95 62 n. 5 (1st Cir.2005) (emphasis added; citation omitted). The “controversial” SFQ exception thus “endures in principle but should be applied with caution and various qualifications.” Rossello-Gonzalez v. Calderon-Serra, 398 F.3d 1, 11-12 (1st Cir.2004) (“Federal ingredient jurisdiction remains ‘controversial,’ because ‘[t]he Supreme Court has periodically affirmed this basis for jurisdiction in the abstract ..., occasionally cast doubt upon it, rarely applied it in practice, and left the very scope of the concept unclear.’ ”)(quoting Almond, 212 F.3d at 23); see Metheny v. Becker, 352 F.3d 458, 460 (1st Cir.2003).[17]
Such special caution is necessary in the instant case because if the SFQ exception were found to have been satisfied merely because the Goebel answer might deny and dispute the plaintiffs copyright co-ownership as a “defense” to the Cambridge state-law accounting claim, see supra note 16, then all state-law accounting claims between copyright co-owners must “arise under” the Copyright Act, even where there is no genuine factual dispute under 17 U.S.C. §§ 101 and 201(a) regarding the provenance of the plaintiffs title. In the vast majority of accounting cases, the parties are likely to stipulate the plaintiffs co-ownership under these Copyright Act definitions, hence state-law issues will predominate the adjudication of the accounting claim. Since the federal courts have exclusive jurisdiction to decide Copyright Act cases, however, see 28 U.S.C. § 1338(a), all such claims would be removable as of right from state to federal court, thus effecting a significant expansion of our “federal question” jurisdiction.[18] More importantly, the SFQ exception neither permits nor requires such a dramatic expansion of our limited jurisdiction.
1. The SFQ Jurisdictional Test
In Grable & Sons Metal Prods., Inc. v. Darue Eng’g & Mfg., 545 U.S. 308, 312-14, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005), the Supreme Court recently elaborated on the inherent limitations of the SFQ exception to the well-pleaded complaint rule, which it originally pronounced more broadly in Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921).[19] “[T]he mere need to apply federal law in a state-law claim will [not] suffice to open the ‘arising under’ door.... [T]his Court [has] confined [it] to those [state-law claims] that ‘really and substantially *96 involv[e] a dispute or controversy respecting the validity, construction or effect of [federal] law.”’ Grable, 545 U.S. at 313, 125 S.Ct. 2363 (noting that the SFQ exception “demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum”) (emphasis added; citation omitted); see Merrell Dow Pharm. v. Thompson, 478 U.S. 804, 813, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (“[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction.”); Dunlap v. G & L Holding Group, Inc., 381 F.3d 1285, 1290 (11th Cir.2004). In other words, “the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.” Grable, 545 U.S. at 314, 125 S.Ct. 2363 (emphasis added). The Court admonished that the federal courts should invoke the SFQ exception only if it is “consistent with congressional judgment about the sound division of labor between state and federal courts.” Id. at 313-14, 125 S.Ct. 2363. Further, “the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction.” Id. at 314.
The Grable Court found the SFQ exception satisfied because the plaintiffs state-law complaint, which sought to quiet title to property which the Internal Revenue Service seized and sold at auction to a third party, depended entirely on a dispute about the adequacy of the IRS’s compliance with seizure notification procedures set forth in the federal tax code, see 26 U.S.C. § 6335. Grable, 545 U.S. at 315, 125 S.Ct. 2363 (“Whether Grable was given [adequate] notice within the meaning of the federal statute is thus an essential element of its quiet title claim, and the meaning of the federal statute is actually in dispute; it appears to be the only legal and factual dispute.”) (emphasis added).
Grable thus requires us to undertake two inquiries: whether (i) the Cambridge state-law complaint, on its face, and without reference to any possible defenses, “necessarily” discloses an “actual” and “substantial” dispute concerning the interpretation of the Copyright Act; and (ii) invocation of the SFQ exception would be consistent with any congressional policy in enacting the Copyright Act as to the proper balancing of jurisdiction between the federal and state courts.[20]
*97 2. The “Actual” and “Substantial” Dispute Criterion
Like the plaintiff’s complaint in De Sylva, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415, supra, the Grable complaint — on its face — placed the meaning of a federal statute in active dispute. If the Grable defendant eventually did not challenge the plaintiffs interpretation of the federal seizure-notification statute, it necessarily would lose the lawsuit, because it would thereby concede its violation of its fiduciary duty under state corporation law. Thus, it was reasonable to anticipate, from the complaint itself, that the federal constitutional issue was substantial and that it would have to be adjudicated.
By contrast, although the Cambridge complaint may depend in the abstract on Seemann’s original copyright co-ownership, that fact alone is insufficient to satisfy Grable’s heightened “active dispute” test. The ultimate success of the Cambridge complaint may depend on an actual adjudication of any number of issues, federal and non-federal, which are not yet apparent at the pleading stage. See Royal v. Leading Edge Prods., Inc., 833 F.2d 1, 2-3 (1st Cir.1987) (finding no jurisdiction, even though, if plaintiff succeeded in obtaining contract rescission, the court would need to apply 17 U.S.C. § 201(b) to defeat his claim; “[t]he work-made-for-hire doctrine is, at best, only tangentially implicated [and][i]ndeed, it is not even mentioned in the complaint”); see also Cambridge Literary, 295 F.3d at 64 n. 4 (“It is possible to imagine a Massachusetts court looking to federal copyright law and German contract law as to whether Hummel, Seemann, and Fink are co-owners; Austrian inheritance law if the Seemann rights are disputed; federal copyright law as to whether the figurines are derivative works; and to the law of any of several jurisdictions as to rights and defenses among co-owners and available remedies.”); Derminer v. Kramer, 386 F.Supp.2d 905, 912 (E.D.Mich.2005). For example, Goebel itself notes that, if Goebel denies the allegation, Cambridge eventually may need to prove as well that the Hummel figurines were “derivative works” from the illustrations contained in Das Hummelbuch, see 17 U.S.C. § 101, and failure to establish that fact might prove equally dispositive and fatal to the accounting claim. Grable makes clear, however, that the mere presence of these potential federal issues is insufficient to create SFQ jurisdiction.
Unlike the plaintiff in De Sylva, who expressly included in his complaint a request for a declaration of his co-ownership rights in the copyright, the Cambridge complaint does not place its co-ownership of the copyright in “active dispute.” Such an active dispute would arise, if at all, at the time Goebel files its answer to the complaint, see supra note 16, and pursuant to the well-pleaded complaint rule, this is insufficient to invoke SFQ jurisdiction. Further, it simply is not the case that Goebel necessarily will forfeit its chances of winning the case if it chooses not to contest the Cambridge co-ownership interests. If Goebel stipulates to the Cambridge co-ownership rights under 17 U.S.C. §§ 101 and 201(a), it will have done no more than concede Cambridge’s standing to bring suit under state law.
3. The “Congressional Intent” Requirement
Application of the SFQ exception to this type of accounting claim between copyright co-owners also would serve no appar *98 ent congressional policy concerning the proper allocation of jurisdictional labor between the federal and state courts in eases which happen to involve copyrighted material. See Templeton Bd. of Sewer Comm’rs v. Am. Tissue Mills of Mass., Inc., 352 F.3d 33, 40-41 (1st Cir.2003) (“We do not believe that merely because a court will have to interpret the federal regulations, it necessarily follows that federal jurisdiction exists.... ‘[T]he determination of whether a federal issue is sufficiently substantial should be informed by a sensitive judgment about whether the existence of federal judicial power is both appropriate and pragmatic,’ and ... ‘at bottom, we must determine whether the dispute is one that Congress intended federal courts to resolve.’ ”) (citations omitted); Nimmer on Copyright § 12.01.
The Copyright Act and its preemption provision expressly apply to acts of copyright infringement, viz., the unauthorized use and exploitation of copyrighted materials by a person who neither owns the copyright nor has a valid license. See 17 U.S.C. § 301(a) (preempting only those “legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified in § 106”) (emphasis added); id. § 106 (providing that “the owner of copyright under this title has the exclusive rights to do and to authorize any of the following [acts].”) (emphasis added). By definition, however, a co-owner who profits from the copyright cannot “infringe” or make “unauthorized use” of the copyright, as that concept is defined in 17 U.S.C. § 106. See Weissmann v. Freeman, 868 F.2d 1313, 1318 (2nd Cir.1989) (“[A]n action for infringement between joint owners will not lie because an individual cannot infringe his own copyright”); Quintanilla v. Tex. Television, Inc., 3 F.Supp.2d 747, 753 (S.D.Tex.1997), aff'd, 139 F.3d 494 (5th Cir.1998).
Instead, the Copyright Act, which sets forth express remedies available to copyright owners against infringers, deliberately omits any comparable express or implied remedy for a co-owner seeking an accounting from a joint copyright owner who has profited from use of the copyright. The Act’s legislative history unambiguously explains the reason for this omission: “[t]here is ... no need for a specific statutory provision concerning [the] rights and duties of the coowners of a work; court-made law on this point is left undisturbed.” H.R.Rep. No. 94-1676, at 121, reprinted in 1976 U.S.C.C.A.N. 5659, 5736. To the extent that this residual court-made law involves the common-law rights of tenants in common, the primary source always has been state (and not federal) law, and the Copyright Act contains no hint that Congress intended to usurp the state courts’ traditional jurisdiction to adjudicate these types of claims. See Nimmer on Copyright § 6.10; Goodman, 78 F.3d at 1012 (“The applicability of federal law ends with that determination [of non-preemption], as Goodman’s claim for an accounting is governed in all respects by state law. It is widely recognized that ‘[a] co-owner of a copyright must account to other co-owners for any profits he earns from the licensing or use of the copyright....’ Significantly, ‘the duty to account does not derive from the copyright law’s proscription of infringement. Rather, it comes from “... general principles of law governing the rights of co-owners.” ’ As those general principles are rooted in state law, we look to the law of Louisiana for answers to the remaining issues presented by this appeal.”) (citations omitted); Oddo v. Ries, 743 F.2d 630, 633 n. 2 (9th Cir.1984) (same, concluding that “a suit to bring the co-owner of a copyright to account does not fall within the district court’s jurisdiction over actions *99 arising under [§ 1338]”); Dead Kennedys v. Biafra, 37 F.Supp.2d 1151, 1153 (N.D.Cal.1999).
In a case where the federal law at issue does not contain any comparable remedy (or at least a partial remedy), one reasonably cannot surmise that Congress saw the asserted federal interest as “substantial,” and thus invocation of SFQ jurisdiction is simply inappropriate. See, e.g., Merrell Dow, 478 U.S. at 817, 106 S.Ct. 3229 (“[A] [state-law negligence] complaint [against a drug manufacturer] alleging a violation of a federal statute [viz., a federal statute banning misbranding of prescription drugs] as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim ‘arising under’ § 1331.”).[21]
Because Cambridge’s state-law accounting meets neither of the two SFQ jurisdictional criteria elaborated in Grable, it cannot be said to “arise under” the Copyright Act.
B. Complete Preemption
Similarly, the complete preemption doctrine does not permit us to disregard the well-pleaded complaint rule and recharac-terize — as mere “artful pleading” — the Cambridge state-law accounting claim as a federal-law claim “arising under” the Copyright Act.[22] The Act plainly does not exert such an overpowering preemptive force as to bring under the federal courts’ subject matter jurisdiction all state-law causes of action between co-owners of a copyrighted work. See Caterpillar, 482 U.S. at 393, 107 S.Ct. 2425 (observing that federal statute’s preemptive effect must be “extraordinary ” to trigger complete preemption); Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Federal courts, as courts of limited jurisdiction, should implement federal preemption doctrines as narrowly as possible. See Lontz v. Tharp, 413 F.3d 435, 440 (4th Cir.2005) (noting that there is a rebuttable presumption against finding complete preemption, so that “[defendants’ burden is to demonstrate that a federal statute indisputably displaces any state cause of action over a given subject matter”) (citation omitted); see also Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, 14B Federal Practice and Procedure: Jurisdiction 3d § 3722.1, at 517 (“Because of the obvious federalism implications of the complete preemption doctrine, its application has been extremely limited by the courts.”). Complete preemption analysis thus depends on the existence of palpable evidence that Congress intended to displace completely a particular category of state-law causes of action, *100 as manifested by the federal statute’s language, overall structure, and legislative history. See Metro. Life, 481 U.S. at 65, 107 S.Ct. 1542; Magee v. Exxon Corp., 135 F.3d 599, 601-02 (8th Cir.1998).
Unlike the few federal statutes which have been found to effect complete preemption (e.g., the governance of the Employee Retirement Income Security Act (ERISA) over all plan — “related” causes of action, see Metro. Life, 481 U.S. at 67, 107 S.Ct. 1542; Hotz v. Blue Cross and Blue Shield of Mass., Inc., 292 F.3d 57, 59 (1st Cir.2002)), the Copyright Act does not encompass all claims simply because the parties’ dispute happens to involve a copyrighted work. See Venegas-Hernández v. Asociación De Compositores Editores De Música Latinoamericana, 424 F.3d 50, 58 (1st Cir.2005) (“The Copyright Act does not draw into federal court all matters that pertain to copyright.”); Royal, 833 F.2d at 2. Further, although the Copyright Act (unlike ERISA, for example) gives the federal courts exclusive (rather than concurrent) jurisdiction over any claims which arise under the Act, see 28 U.S.C. § 1338(a), this jurisdictional canon necessarily presupposes an antecedent inquiry as to whether a particular state-law cause of action involving a copyrighted work can be said to “arise under” the Act in the first instance.
Unlike ERISA, 29 U.S.C. § 1144(a) (providing that ERISA “shall supersede any and all State laws” to the extent that those laws “relate to any employee benefit plan”) (emphasis added), the Copyright Act’s preemption provisions are not even remotely panoptic. The Copyright Act preempts only those “legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified in § 106.” 17 U.S.C. § 301(a) (emphasis added). Further, “[njothing in [the Act] annuls or limits any rights or remedies under the common law or statutes of any State with respect to... activities violating legal or equitable rights that are not the equivalent to any of the exclusive rights within the general scope of copyright as specified in section 106A with respect to works of visual art.” Id. § 301(b)(3) (emphasis added); see BLAB T.V. of Mobile, Inc. v. Comcast Cable Commc’ns, Inc., 182 F.3d 851, 857 (11th Cir.1999) (finding no complete preemption because the federal Cable Act contained language which “preserv[ed] state authority except in areas in which the exercise of this authority would be inconsistent with federal law”); cf. Metro. Life, 481 U.S. at 65-66, 107 S.Ct. 1542 (citing — as affirmative evidence of complete preemption — legislative history that “[a]ll such actions in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor-Management Relations Act of 1947”).[23]
More importantly, the Copyright Act does not preempt all state-law claims between copyright co-owners, since the Act itself creates no alternative federal cause of action, remedy, or procedural mechanisms to govern such claims. See Franchise Tax Bd., 463 U.S. at 24, 103 S.Ct. 2841 (“[I]f a federal cause of action corn- *101 pletely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily ‘arises under’ federal law.”) (emphasis added); Beneficial Nat’l Bank v. Anderson, 539 U.S. 1, 8, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003) (finding that National Bank Act completely preempted state-law cause of action because it “provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action”) (emphasis added); Metheny, 352 F.3d at 460 (noting that complete preemption does not pertain where federal statute “lacks a federal enforcement mechanism by which plaintiffs may proceed with claims of the type asserted in this action”); Bd. of Chosen Freeholders v. Tombs, 215 Fed.Appx. 80, 81 (3d Cir.2006) (unpublished); Ultramar Am. Ltd. v. Dwelle, 900 F.2d 1412, 1416 (9th Cir.1990) (“[W]here federal law preempts state law yet fails to provide its own cause of action ... although federal law is a perfectly valid defense to a state claim, that claim cannot be said to actually be a federal claim, for no federal right of action exists on point.”); Korman v. Igle-sias, 736 F.Supp. 261, 265 (S.D.Fla.1990) (“[T]he Copyright Act neglected to provide for remedies between co-authors [and so] ... Congress must have intended that coauthors may claim for an accounting or otherwise proceed under common law principles.”). Indeed, as previously noted, the Act’s legislative history plainly discloses Congress’ intent to leave such disputes outside the federal court’s exclusive copyright jurisdiction. See H.R.Rep. No. 94-1676, at 121, reprinted in 1976 U.S.C.C.A.N. 5659, 5736.
As the Cambridge state-law accounting claim runs afoul of neither the SFQ jurisdictional criterion, nor the complete preemption criterion, it does not “arise under” the Copyright Act.[24] Hence, the Act’s three-year limitations period is not applicable.[25]
*102 C. The Affirmative Defense of Preemption
The district court dismissed the Cambridge complaint on the ground that the Copyright Act preempted the Cambridge accounting claim. Many of the same factors that preclude our finding that the Copyright Act completely preempts the Cambridge state-law accounting claim likewise would militate against any finding for Goebel at summary judgment on its preemption defense. See Fifth Third Bank, 415 F.3d at 745 (noting that preemption is an affirmative offense upon which defendant bears the burden of proof); see also Brown v. Earthboard Sports USA, 481 F.3d 901, 913 (6th Cir.2007). With respect to the preemption of state-law causes of action involving copyrighted works, we have applied the two-pronged “subject matter”/“extra-element” test, Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1164-65 (1st Cir.1994) (finding no Copyright Act preemption of state-law claim for trade secrets misappropriation because latter involved “extra element”— viz., breach of a fiduciary duty — not found in a copyright infringement claim); see also Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc., 307 F.3d 197, 217-19 (3d Cir.2002); Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc., 220 F.3d 396, 404-05 (5th Cir.2000), and again inquire whether the particular state law at issue is the functional equivalent of a federal copyright infringement action, or instead is qualitatively different from a copyright infringement claim. See 17 U.S.C. § 301(a) (“preempting state causes of action which are premised on rights “equivalent to” copyright-holder’s exclusive rights of use set forth in § 106”); Stromback v. New Line Cinema, 384 F.3d 283, 301 (6th Cir.2004).
Under the Data General test, the state-law accounting claim between co-owners of a copyrighted work, which sounds neither in contract nor tort, but in equitable principles of trust as between joint property owners, see, e.g., Bacon v. Bacon, 165 N.E. 485 (1929) (describing co-owner relationship as fiduciary in nature); supra note 25, is not preempted because it is not the qualitative equivalent of a copyright infringement claim under the Copyright Act. Further, the Cambridge state-law accounting claim requires an extra element not found in a copyright infringement case: an existing equitable trust relationship between the parties. In Data General, the relationship was fiduciary; here, the relationship is joint ownership of property giving rise to an equitable duty to provide an accounting of profits. The Copyright Act does not preempt the state-law accounting claim, and thus it cannot be dismissed on preemption grounds.
Ill

CONCLUSION

In order to bring the Cambridge state-law cause of action under the Copyright Act’s three-year limitations provision, the majority announces a blanket jurisdictional rule which threatens to draw into the federal courts many copyright-related claims over which Congress deliberately intended to give the state courts concurrent jurisdiction. As the state courts are perfectly competent to interpret Copyright Act definitions that may be tangentially relevant to their disposition of state-law causes of action, the mere possibility that they may *103 need to consult those statutory definitions should not convert claims which essentially arise under state law into federal claims, particularly where the corresponding federal statute has eschewed comparable remedies. Therefore, I respectfully dissent.

. The Cambridge complaint sufficiently invoked the district court's diversity jurisdiction, see 28 U.S.C. § 1332, and thus does not depend on the existence vel non of federal-question jurisdiction. The jurisdictional analysis is relevant only to the question whether the claim is "maintained” under the Copyright Act, see infra note 21, and thus subject to its three-year statute of limitations, rather than the applicable state-law limitations period.

. All the other cases cited by the majority are cut from this same cloth, and involve a straightforward holding that a claim which *93 the plaintiff expressly denominates as a federal-law claim obviously must be said to "arise under” the federal statute that it invokes. See Santa-Rosa v. Combo Records, 471 F.3d 224, 227-28 (1st Cir.2006), cert. denied, - U.S. -, 127 S.Ct. 2265, 167 L.Ed.2d 1094 (2007); Gaiman v. McFarlane, 360 F.3d 644, 652 (7th Cir.2004); Merchant v. Levy, 92 F.3d 51, 55 (2d Cir.1996); Goodman v. Lee, 78 F.3d 1007, 1011 (5th Cir.1996).

. Oddly enough, given the fact that the case has proceeded to the summary judgment stage, Goebel has yet to file an answer to the Cambridge complaint, see Wolf v. Reliance Standard Life Ins. Co., 71 F.3d 444, 449 (1st Cir.1995) (noting that affirmative defenses normally are waived if not filed in initial responsive pleadings), has yet to deny the Cambridge allegation that Cambridge is a valid copyright co-owner (via descent and contract) of Seemann’s original title, and has not produced a Rule 56 evidentiary proffer which would call the Seemann joint ownership into doubt. See H.R.Rep. No. 94-1476, 120, 121 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5736 (noting that co-ownership inquiry must focus on "the intention at the time the writing is done that the parts be absorbed or combined into an integrated unit”); Thomson v. Larson, 147 F.3d 195, 199 (2d Cir.1998). Rather, Goebel simply maintains on appeal that the mere possibility of such a factual dispute satisfies the SFQ exception to the well-pleaded complaint. Goebel would face three considerable hurdles, however, if it were to pursue such a denial: (i) Das Hum-melbuch, on its face, appears to be a unitary and fully integrated creation of artwork and poetry, viz., a "joint work” as defined by § 101 and § 201(a), see Lulirama Ltd., Inc. v. Axcess Broad. Servs., Inc., 128 F.3d 872, 877 (5th Cir.1997) (noting that the contribution of an independent contractor will not be deemed a "work for hire” unless it fits into "one of the nine narrowly drawn categories of works”); (ii) Seemann’s listing as an author on the certificate of registration creates a rebuttable presumption of her joint authorship and ownership, see Brown v. Latin Am. Music Co., 498 F.3d 18, 23 (1st Cir.2007) (citing 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.”)); and (iii) any rebuttal of this presumption would depend on Goebel’s proof of the contrary intention of persons long since deceased, see, e.g., Stuart & Sons, L.P. v. Curtis Publ’g. Co., 456 F.Supp.2d 336, 348 (D.Conn.2006).

. Although most cases discussing the SFQ jurisdictional exception have involved general federal question jurisdiction, 28 U.S.C. §§ 1331, 1441, the exception is equally available to establish "copyright” jurisdiction under 28 U.S.C. § 1338(a). See Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 808-809, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988).

. Even outside the context of copyright co-ownership claims, if the mere possibility of a dispute concerning the interpretation of federal copyright law is sufficient to satisfy the SFQ exception, many other state-law claims which are not preempted by the Copyright Act (viz., those which include an "extra element” beyond mere infringement) nonetheless would be deemed to "arise under” federal law. See infra Section II.C.

.In Smith, plaintiff sought to enjoin corporate directors from investing in a federally chartered land bank, pursuant to a state law which prohibited directors from investing in any government bonds that were issued in violation of the law. Smith, 255 U.S. at 195—96, 41 S.Ct. 243. Plaintiff's complaint alleged that the directors had breached their fiduciary duty to the shareholders because the federal law which authorized the directors of a federal land bank to issue bonds was unconstitutional and invalid. Id. at 197-98, 41 S.Ct. 243. The Court found SFQ jurisdiction because the plaintiff could only prevail on his statutory claim for breach of fiduciary duty by proving his federal constitutional claim. Id. at 201, 41 S.Ct. 243.

. We often cite the principle set forth in T.B. Harms Co. v. Eliscu, 339 F.2d 823, 828 (2d Cir.1964) (noting that a claim "arises under” the Copyright Act if, inter alia, it "asserts a claim requiring construction of the Act”), as a device to establish the absence of federal question jurisdiction, see, e.g., id. at 827 (noting that “if any aspect of the suit requires an interpretation of the Copyright Act, the complaint does not reveal it”) (emphasis added), but we have been reluctant to embrace the test as a reliable means to establish the presence of SFQ jurisdiction. See, e.g., Gener-Villar, 417 F.3d at 206 n. 5 ("We need not decide whether the Puerto Rico court's analysis of federal copyright preemption law [viz., that it lacked jurisdiction to decide copyright ownership interests] was precisely correct because, in any event, the [] court viewed its jurisdiction as limited to Puerto Rico claims.”); First Fed. Sav. and Loan Ass’n v. Greenwald, 591 F.2d 417, 423 (1st Cir.1979) (noting that "some circuits have taken a broader view of federal question jurisdiction, namely that ‘(e)ven though the claim is created by state law, a case may "arise under” a law of the United States if the complaint discloses a need for determining the meaning or application of such a law,’ ” but then refusing to decide whether or not to adopt that rule as circuit law) (citation omitted); see also *97 Royal v. Leading Edge Prods., Inc., 833 F.2d 1, 2 (1st Cir.1987) (referring to the T.B. Harms test as merely “the most frequently cited test,” but finding no federal jurisdiction).

. Further evidence of a lack of congressional intention can be seen in the Copyright Act's statute-of-limitations provision. Rather than stating, in typical fashion, that the limitations period applies to all actions “arising under” the Act, the limitations apply only to those claims "maintained under” the Act. 17 U.S.C. § 507(b) (emphasis added); see Goodman, 78 F.3d at 1013 (noting that even though state-law accounting claim arises under Copyright Act for jurisdictional purposes, the Act's three-year limitations period is not triggered, because the Act contains no remedy as between copyright co-owners, and thus the accounting claim cannot be said to be "maintained” under the Act, but instead is maintained under state law).

. Complete preemption, which is a jurisdictional principle, is distinct from normal "conflict” preemption, see SPGGC, 488 F.3d at 530 n. 4, 534; Bruneau v. FDIC, 981 F.2d 175, 179-80 (5th Cir.1992); Franks v. Waterfield Mortgage Co., No. 1:06-00227, 2007 WL 1232218, at *3 (N.D.Ind. Apr.24, 2007), the latter being an affirmative defense which defendant must plead and prove, see Fifth Third Bank ex rel. Trust Officer v. CSX Corp., 415 F.3d 741, 745 (7th Cir.2005); infra section II.C.

. The two courts of appeals which have held that the Copyright Act completely preempts state law notably involved state causes of action which were the functional equivalent of federal claims for copyright infringement, and not state causes of action between copyright co-owners. See Ritchie v. Williams, 395 F.3d 283, 287-88 (6th Cir.2005) (finding that Copyright Act completely preempts all state-law claims which are the qualitative equivalent of a copyright infringement suit); Rosciszewski v. Arete Assocs., Inc., 1 F.3d 225, 232 (4th Cir.1993) (same).

. Assuming arguendo that the Copyright Act’s limitations period applied to the Cambridge accounting claim, I would be compelled to dissent. In my view, Cambridge has demonstrated on appeal that several material factual disputes remain as to when its accounting claim accrued, thus precluding, as a matter of law, any Rule 56 determination of the accrual date. See Massey v. United States, 312 F.3d 272, 276 (7th Cir.2002) ("Summary judgment is properly granted on the basis of a statute of limitations defense if ... there exist no genuine issues of material fact regarding the time at which plaintiff's claim has accrued.”).

. The district court held, in the alternative, that even if the Copyright Act’s three-year limitations period did not apply to the Cambridge accounting claim, the claim still would be governed by the state’s three-year limitations period applicable to tort actions. This alternative holding is demonstrably wrong, for two reasons. First, Goebel would be es-topped from asserting this argument by its previous statement, in its first appeal on the personal jurisdiction issue, that Cambridge "does not assert a cause of action based on tortious activity either within or outside Massachusetts.” See Cadle Co. v. Schlichtmann, Conway, Crowley & Hugo, 338 F.3d 19, 23 (1st Cir.2003) (" 'We generally will not permit litigants to assert contradictory positions at different stages of a lawsuit in order to advance their interests.’ ”) (citation omitted). Second, the Cambridge accounting claim does not allege that Goebel wrongly retained or converted profits that it derived from Das Hummelbuch, nor could it do so because, as a co-owner of the copyrighted work, Goebel is free to use the copyright to its fullest. See Goodman, 78 F.3d at 1012. Only once its co-owners make a suitable demand for an accounting would Goebel have an equitable duty to account to all of its co-owners for their respective shares of those profits. See Bacon v. Bacon, 266 Mass. 462, 165 N.E. 485, 488 (1929); Dapkus v. Dapkus, No. 269521-KFS, 2007 WL 1229399, at *3, 2007 WL 1218685 (Mass. Land Ct. Apr. 26, 2007) (unpublished); see also Goodman, 78 F.3d at 1013 ("Under Louisiana law, an action by a co-owner for an accounting is governed by a ten-year prescriptive period (statute of limitations), which 'd[oes] not begin to run until *102 demand is made ... for an accounting.' ’’) (citation omitted); Bushner v. Bushner, 134 Colo. 509, 307 P.2d 204, 208 (1957); Goergen v. Maar, 2 A.D.2d 276, 153 N.Y.S.2d 826, 831 (N.Y.App.Div.1956); Harrell v. Samson Res. Co., 980 P.2d 99, 107 (Okla.1998); Hallmark v. Tidwell, 849 S.W.2d 787, 791 (Tenn.App.1992).